# THE DAHLBERG COMPANY v. WESTERN HEARING AID CENTER, LTD., AND OTHERS.*

107 N. W. (2d) 381.

January 27, 1961—Nos. 38,030, 38,031, 38,032.

---

*Certiorari denied, 366 U. S. 961, 81 S. Ct. 1921, 6 L. ed. (2d) 1253.

*Joseph Robbie, Denver Kaufman,* and *Jerome Fitzgerald,* for appellants.

*Levitt, Palmer & Rogers,* for respondent.

MURPHY, JUSTICE.

This is an appeal from an order of the district court denying the defendants' motion to have service of process quashed and to dismiss six actions instituted by The Dahlberg Company of Minneapolis, Minnesota, against Western Hearing Aid Center, Ltd., Dahlberg Western Company, Inc., and Oregon Hearing Center, Inc., all foreign corporations.

It appears from the record that plaintiff, The Dahlberg Company, is a Minnesota corporation engaged in the manufacture and sale of hearing aids, parts, and accessories. It seeks to recover on five promissory notes which two of the defendants made and delivered to plaintiff at its plant in Minneapolis and upon an open account had with one of the defendants. Each of the notes is payable in Minneapolis. Each of the defendants is a corporation organized and existing under the laws of Oregon. The total amount involved in the six cases is $24,720.79, all of which is payable by the defendants to the plaintiff in Minneapolis.

The defendant corporations are engaged in the sale and distribution of hearing aids and accessory products in areas outside of the State of Minnesota. The defendant Dahlberg Western Company, Inc., entered into two contracts in writing with the plaintiff which were executed in Minnesota. The plaintiff company filled the orders of the defendant corporations at its plant in Minneapolis. The orders were delivered to the defendant corporations f.o.b. the plaintiff's plant at Minneapolis. The president of each of the defendant corporations is one Harold S. Jones. It appears from the record that he attended sales meetings and conferences at the offices of the plaintiff company at Minneapolis, during which meetings business policies, plans, and procedures were discussed, considered, and agreed upon. The promissory notes in question were executed by the defendant corporations at plaintiff's office

in Minneapolis, were delivered to the plaintiff in Minneapolis, and made payable there. The defendant corporations have no assets or property in Minnesota nor do they maintain offices or a place of business in this state.

The summons and complaint in each action was served by leaving a duplicate copy with the secretary of state of Minnesota as agent for process pursuant to Minn. St. 303.13, subd. 1(3).[1] It is the contention of the defendant foreign corporations that they do not have sufficient contacts with the State of Minnesota to render them amenable to the jurisdiction of this state. They contend that the application of § 303.13, subd. 1(3), would be unconstitutional as applied to the particular facts in this case.

■ In two recent cases decided by this court § 303.13, subd. 1(3), the so-called "single-act" statute, has successfully withstood attacks upon its constitutionality. In Beck v. Spindler, 256 Minn. 543, 99 N. W. (2d) 670, we held that a foreign corporation had established minimum contacts sufficient to subject it to the jurisdiction of the courts of this state when it had granted a local distributor an exclusive fran-

---

[1]Minn. St. 303.13, subd. 1(3), provides: "If a foreign corporation makes a contract with a resident of Minnesota to be performed in whole or in part by either party in Minnesota, or if such foreign corporation commits a tort in whole or in part in Minnesota against a resident of Minnesota, such acts shall be deemed to be doing business in Minnesota by the foreign corporation and shall be deemed equivalent to the appointment by the foreign corporation of the secretary of the State of Minnesota and his successors to be its true and lawful attorney upon whom may be served all lawful process in any actions or proceedings against the foreign corporation arising from or growing out of such contract or tort. Such process shall be served in duplicate upon the secretary of state, together with a fee of $6 and the secretary of state shall mail one copy thereof to the corporation at its last known address, and the corporation shall have 20 days within which to answer from the date of such mailing, notwithstanding any other provision of the law. The making of the contract or the committing of the tort shall be deemed to be the agreement of the foreign corporation that any process against it which is so served upon the secretary of state shall be of the same legal force and effect as if served personally within the State of Minnesota."

chise to sell its products in St. Louis County; joined with the distributor in filing documents with the secretary of state of Minnesota in order that he might obtain the dealer's license; reimbursed the distributor for a portion of advertising expense; furnished him with conditional sales contract forms; mailed direct to the buyer of its product a written warranty; and later sent its servicemen to the state in an effort to repair defects in the product. In the more recent case of Atkins v. Jones & Laughlin Steel Corp. 258 Minn. 571, 104 N. W. (2d) 888, which involved an action for negligence resulting in personal injuries, we held that under the so-called "single-act" statute jurisdiction was acquired against a foreign corporation which did not maintain salesmen in this state nor have contract relations with dealers or distributors here. The complaint in that action alleged that plaintiff while handling a product distributed by defendant had been injured in this state as a result of defendant's negligence. We held that if the allegations of the complaint were established it would follow that the defendant would be subject to the jurisdiction of our courts since the last event essential to the tort liability occurred here. That event, the injury to the plaintiff, would provide sufficient contact between the defendant and the forum to subject it to process under § 303.13, subd. 1(3). In both the Beck and Atkins cases we discussed at length the subject of judicial jurisdiction over nonresident corporate defendants. Most, if not all, of the significant decisions relating to this subject were discussed in those cases.

We observed in those cases that International Shoe Co. v. Washington, 326 U. S. 310, 66 S. Ct. 154, 90 L. ed. 95, 161 A. L. R. 1057, altered the foundation of the test of due process from the strict requirement of physical power over the defendant to the flexible requirement of minimum contacts between the defendant corporation and the forum state. Based upon the theory of the International Shoe Company case and McGee v. International Life Ins. Co. 355 U. S. 220, 78 S. Ct. 199, 2 L. ed. (2d) 223, a number of states, including Minnesota, enacted laws broadening the basis for acquisition of jurisdiction over foreign corporations.[2] By these statutes the legislature has

---

[2]Various states, including Illinois, Maryland, North Carolina, Vermont,

recognized that the development of interstate commerce has brought about a fundamental change in our national economy which justifies expanding the scope of state jurisdiction over foreign corporations and other nonresidents. They comprehend, as indicated by the International Shoe case, that one who by his conduct creates a cause of action against himself in a state ought to be subject to action in that state. Under the former concept[3] of "physical presence," "consent," or "doing business" as a basis for jurisdiction, defendants have had too much protection. Plaintiffs ought to be entitled to try their cases where the facts occur, the witnesses normally reside, and local law applies. This is in keeping with the "fair play" and "substantial justice" standard laid down in the International Shoe case as the proper one to apply to the problem. It is no greater hardship on the defendant to try his case where his voluntary act brought the dispute into being than to require the plaintiff to try it only where he may later be able to get service on the defendant's person. The enactment of the new statutes and the numerous decisions on the subject have given rise to the most extensive reexamination of this area of the law since the early statutes providing for service of process on nonresident motorists by service on a state official were validated by Hess v. Pawloski, 274 U. S. 352, 47 S. Ct. 632, 71 L. ed. 1091.[4] Minn. St. 170.55; 12 Dunnell, Dig. (3 ed.) § 6515j(40).

---

and West Virginia, have passed liberal statutes under the International Shoe doctrine providing for the jurisdiction of causes of action arising from any contract made or tort committed within the state.

[3]Pennoyer v. Neff, 95 U. S. (5 Otto) 714, 24 L. ed. 565. ˙

[4]See, Traynor, *Is this Conflict Really Necessary?* 37 Tex. L. Rev. 657; *Recent Interpretations of "Doing Business" Statutes,* 44 Iowa L. Rev. 345; *Developments in the Law, State-Court Jurisdiction,* 73 Harv. L. Rev. 909; *The Isolated Contract as a Basis of Jurisdiction over Non-Residents,* 22 U. of Chi. L. Rev. 674; *Procedure—Foreign Corporation held not Subject to Illinois Jurisdiction under Civil Practice Act, Section Seventeen, Unless Physically Present when "Doing Business" in Illinois,* 9 De Paul L. Rev. 106; Joelson, *Application of "Minimum Contacts" Test to Distributorship Relations,* 21 Ohio St. L. J. 126; 43 Calif. L. Rev. 338; 50 N. W. L. Rev. 425; 42 Minn. L. Rev. 909; 43 Minn. L. Rev. 569; Horowitz, *Bases of Jurisdiction of California Courts to Render Judgments Against Foreign*

A further examination of the great mass of material on this subject is not warranted here. It is sufficient to say that as applied to the particular facts in this case a nonresident corporate defendant may be subjected to the jurisdiction of our courts under § 303.13, subd. 1(3), where the nonresident defendant does some act or consummates some transaction involving at least minimal contacts in the forum which gives rise to a cause of action resulting from activities of the defendant within this state. Where such minimal contacts exist the courts of this state may accept jurisdiction where to do so would be consonant with traditional notions of fair play and substantial justice. The reasonableness of subjecting the defendant to jurisdiction under this rule may be tested by the standards analogous to those of forum non conveniens.

■ In examining the record to determine the extent of the activities of the defendant corporations in Minnesota, it may be noted that the corporations are interrelated in that they possess common officers, directors, and stockholders, who in turn are related by blood or other family ties to Harold S. Jones, who is an officer, director, and general manager of all of the defendant corporations. The dominating defendant corporation is Dahlberg Western Company, Inc., which had a written distributor's contract with the plaintiff. It was entered into October 1, 1958, renewable automatically for 1-year periods until notice of termination by either party. Dahlberg Western agreed to maintain adequate sales, service, and storage facilities and agreed to use its best efforts to sell and promote the plaintiff's products and agreed to submit orders in writing to the plaintiff for acceptance or refusal at its place of business in Minnesota. Dahlberg Western further agreed

---

*Corporations and Non-Resident Individuals,* 31 So. Calif. L. Rev. 339; Kurland, *The Supreme Court, the Due Process Clause and the In Personam Jurisdiction of State Courts—from Pennoyer to Denckla: A Review,* 25 U. of Chi. L. Rev. 569; Reese and Galston, *Doing an Act or Causing Consequences as Bases of Judicial Jurisdiction,* 44 Iowa L. Rev. 249; Comments, 47 Geo. L. J. 342; 42 Marquette L. Rev. 537; 13 U. of Miami L. Rev. 205. See, also, deVries and Lowenfeld, *Jurisdiction in Personal Actions—A Comparison of Civil Law Views,* 44 Iowa L. Rev. 306.

that it would operate in accordance with plaintiff's published policies and procedures. A second agreement referred to as a "BASIC QUOTA AGREEMENT" was also entered into whereby Dahlberg Western agreed to buy at least $3,800 of hearing aids at distributor prices each month. Dahlberg Western agreed to cooperate in formulating plaintiff's policies, procedures, sales, and promotion programs; it agreed to participate with plaintiff in advertising, to maintain a good credit rating, and to submit financial information when requested by plaintiff. Dahlberg Western undertook orally to supervise, direct, and manage the sales and distribution of Dahlberg hearing aid products to other dealers and distributors in its territory. In consideration for this supervisory and managerial work Dahlberg Western and Jones were to be paid a commission of 7 percent on all hearing aid products purchased from the plaintiff in Minneapolis by other hearing aid dealers in the defendants' territory. The hearing aid products were delivered in Minneapolis to the defendants f.o.b. plaintiff's plant and office. Harold S. Jones frequently attended sales meetings and conferences at the offices of the plaintiff in Minneapolis where policies and procedures were discussed and agreed upon. The defendants furnished to the plaintiff reports of sales, receipts of payments for products sold, lists of customers, and products for repairs and parts. These agreements resulted in the execution of the promissory notes which are the subject of these suits, which notes were executed and delivered by the defendant corporations at the plaintiff's place of business in Minneapolis.

It is our view that the holdings in Beck v. Spindler, 256 Minn. 543, 99 N. W. (2d) 670, and Henry R. Jahn & Son, Inc. v. Superior Court, 49 Cal. (2d) 855, 323 P. (2d) 437, apply to this case. The Beck case involved the activities of a foreign manufacturer who sold his product in Minnesota. The Jahn case involved the activities of a New York corporation which purchased a product in the State of California. We are of the view that the facts already recited bearing upon the activities of the defendants in this state are analogous with those involved in the two authorities just cited and are sufficient to give rise to the contacts which will permit our courts to take jurisdiction. It is

apparent from the facts stated that the Oregon defendants have enjoyed the benefits of the laws of this state and that they have had access to our courts to enforce any rights in regard to the transactions involved. Moreover, the actions grew directly out of the relationships of the parties created in this state. In considering the factors bearing on traditional notions of fair play and substantial justice, it seems clear that the defendants' burden of defending in Minnesota is no greater than would be the plaintiff's burden of suing in the State of Oregon. At any rate there is nothing in the record before us which would indicate that it might be a hardship upon the defendant corporations to defend in Minnesota.

It is unnecessary for us to discuss separately the action predicated upon open account, since it is a part of a series of transactions and activities arising between the parties in this state and for our purposes is in the same legal category as the promissory note transactions.

Nor is it necessary for us to discuss the New York decisions cited by the defendants. It is apparent that because of the unique character of New York's commerce, its courts have not been influenced by the principles of the International Shoe case to the same extent as have courts and legislatures in other jurisdictions.

Affirmed.