# BERNIE DANOV v. ABC FREIGHT FORWARDING CORPORATION AND OTHERS.

122 N. W. (2d) 776.

July 19, 1963—No. 38,667.

*Janes & Elliott* and *Robert A. Nicklaus,* for appellants.
*Timothy T. Flynn,* for respondent.

THOMAS GALLAGHER, JUSTICE.

This is an appeal by the defendants ABC Freight Forwarding Corporation Employees' Profit Sharing Plan and Trust and its trustees, Arthur J. Brown, Robert R. Decker, Leon Mitchell, Marvin H. Barsky, and Irwin Ruby, from an order of the district court denying their motion to quash service of process upon them; and denying their motion to dismiss this action against them. Such service was made pursuant to Minn. St. 540.152, which provides in part:

"The transaction of any acts, business or activities within the State of Minnesota by any officer, agent, representative, employee or member of any * * * groups or associations having officers, agents, members or property without the State on behalf of such * * * groups or associations or any of its members * * * shall be deemed an appointment by such * * * groups or associations of the secretary of state of the State of Minnesota to be the true and lawful attorney of such * * * groups or associations, upon whom may be served all legal processes or notices in any action or proceeding against or involving said * * * groups or associations growing out of such acts, business or activities within the State of Minnesota resulting in damage or loss to person or property or giving rise to any cause of action under the laws of the State of Minnesota * * *."

Defendants' motions to quash service of process upon them was based upon the grounds that (1) none of the individual defendants were at any time within the state; (2) none of the assets of the trust relative to which this action was instituted were at any time within the state; (3) at no time has there been that minimal contact with plaintiff or other residents of Minnesota, sufficient to confer jurisdiction over defendants upon the Minnesota courts; and (4) in so far as § 540.152 purports to give such jurisdiction to the Minnesota courts in this action it deprives defendants of their constitutional rights to due process.

Defendant ABC Freight Forwarding Corporation, which is not an appellant here, was organized and maintains its headquarters in the State of New York. It is engaged in the business of transporting freight and maintains a branch office in the city of St. Paul. It will be referred to herein as the ABC Corporation. Defendant ABC Freight Forwarding Corporation Employees' Profit Sharing Plan and Trust, referred to herein as ABC Employees' Trust, which is one of the appellants here, is a trust organized under the laws of the State of New York, with offices in New York City. The ABC Corporation, which inaugurated the trust December 24, 1952, and is the settlor thereof, has at various times made payment to it from its profits in furtherance of a profit-sharing plan for its employees. The individual defendants who are appellants here are trustees of the trust and are also officers or employees of the ABC Corporation. They are all domiciled in New York and have never been within the State of Minnesota.

In January 1953 plaintiff was employed as manager and salesman for the ABC Corporation in its St. Paul offices, and served in this capacity until September 1959. At the time of his employment by the corporation, it is his claim that he was advised by its representative that his compensation would include wages and the right to participate in the corporation's profit-sharing plan as provided in the trust described. According to the provisions of the trust agreement, a copy thereof was to be furnished to each employee of the corporation presumably as a part of his employment agreement. This contained the following provisions:

"Section 10. Title to Trust Property. The title to all Trust property shall be vested in, and remain exclusively in, the Trustees. The Em-

ployer, the Trustees, active and inactive members, estates of deceased members, or any other person or persons shall have no right, title or interest in Trust property except to have the same held, invested, and applied in accordance with the terms of this Agreement.

\* \* \* \* \*

"Section 12. \* \* \*

\* \* \* \* \*

"\* \* \* the Employer does not guarantee the Trust Fund from loss, depreciation, or failure to produce net earnings, nor does the Employer guarantee the payment of any money which may be or become due to any person hereunder.

\* \* \* \* \*

"Section 16. Employee's Interest in Trust. \* \* \* If the Employer contributions hereto conform to the Wage Stabilization requirements \* \* \* then in no event shall the Employer have any right, claim or beneficial or reversionary interest in any assets of the Trust \* \* \*; but nothing contained in this Agreement shall be construed to impair the right of the Employer to see to the proper administration of the Trust in accordance with the provisions hereof. \* \* \*

"Section 17. Inspection of Records. The Employer shall have the right to have the books, accounts, and records of the Trustees examined at any time, or from time to time, by such accountants, attorneys, agents, or employees as may be selected by the Employer \* \* \*.

"Section 18. Amendment of Agreement. The Employer reserves the right to amend the Agreement at any time, and from time to time, effective as of any specified current, prior, or later date, provided that the rights, duties, and responsibilities of the Trustees shall not be fixed or changed without their consent, and provided further that no such amendment shall vest the Employer with any right, title, or interest in and to the assets of the Trust, retroactively reduce or diminish the balance of accounts or otherwise deprive active members of their existing rights hereunder \* \* \*.

"Section 19. Termination of Trust. The Trust shall continue until terminated under the provisions of this Agreement. While it is the hope,

intention, and expectation of the Employer to continue to maintain this Trust indefinitely, the Employer must, nevertheless, reserve the right to terminate the Trust by giving prior written notice to that effect to the Trustees in which event the Trust shall be deemed terminated within five (5) days after the mailing of such notice. * * *

"Upon termination of the Trust * * * the rights of all members shall vest and the Trustees shall distribute to each active and inactive member and beneficiary the closing balance of his account * * *.

&ast; &ast; &ast; &ast; &ast;

"Section 25. Execution. This Trust has been created by the parties thereto in the City, County and State of New York. The principal offices of the Employer and the domiciles of the Trustees are in the State of New York, and it is contemplated that the situs of administration of the Trust will continue in the State. Accordingly, all questions arising in respect to the Trust, including those pertaining to its validity, interpretation, and administration, shall be governed, controlled, and determined in accordance with the laws of the State of New York.

"This Agreement may be executed in as many counterparts as desired by the Parties thereto, any one of which shall have the full force and effect of an original copy. A copy of this Agreement shall be delivered forthwith to every permanent employee of the Employer. A similar copy hereof shall be delivered to each new employee immediately upon his employment becoming permanent."

At that time plaintiff was also furnished a form prepared and distributed by the ABC Corporation which contained a number of questions and answers in explanation of the profit-sharing plan under which plaintiff was entitled to share in the corporation profits. The following were included therein:

"Q. 1 What is the purpose of the Plan?

"A. ABC wishes further to reward your loyal and efficient services as employees by giving you a share of the profits of the business, both present and future. The Plan is designed to provide for your welfare in your old age and for your families upon your death.

"Q. 2 What is the cost of the Plan to me?

"A.   Absolutely nothing! Nothing is taken out of your salaries to pay for any share in the Plan.

"Q.   3   What does the company contribute to the Plan?

"A.   The company will each year pay over to the Trustees as a contribution of the lesser of the following two amounts:

"(a)   15% of the total compensation paid to employee-members for such year; or

"(b)   20% of the company's annual net earnings before Federal Income taxes.

\*   \*   \*   \*   \*

"Q.   5   Who administers the Plan?

"A.   ABC has selected five employees to act as Trustees who will administer the Plan and Trust.

\*   \*   \*   \*   \*

"Q.   8   Who is bearing the expenses of maintaining the Plan and Trust?

"A.   All the usual expenses of administering the Plan and Trust are borne by the employer, ABC.

\*   \*   \*   \*   \*

"Q.   14   When may I normally expect the money standing in my benefit account to be paid to me?

"A.   In view of the fact that the purpose of the Plan is primarily to provide for your welfare after your retirement from the employ of ABC, these funds are payable to you when you have reached the retirement age of 60. If you become permanently disabled, the payment of benefits will begin regardless of your age.

\*   \*   \*   \*   \*

"Q.   16   Suppose I voluntarily resign, then what?

"A.   You will be entitled to 10% of the then value of your account for each 12 months of membership in the Trust, not exceeding 100% thereof; and the balance if any is equitably allocated among remaining members. (see Section 8.)

\*   \*   \*   \*   \*

"Q.   18   Can my creditors attach or garnish these funds?

"A. No. Not while they are held by the Trustees and you are employed by ABC."

In the present action plaintiff alleged that when his employment was terminated in September 1959 there was due him under the profit-sharing plan the sum of $2,334.60 plus an undetermined amount covering his share of the profits earned while he was employed in 1959; and that in addition there was due to him from his employer the sum of $286 in unpaid salary and the sum of $219 as a bonus.

In its answer to this complaint, the ABC Corporation alleged that:

"* * * plaintiff has not stated a cause of action against defendant in his first cause of action for the reason that a Profit Sharing Plan and Trust was created pursuant to the terms of Section 401 et seq. of the Internal Revenue Code, 1954, over which this defendant has no ownership or control * * * of the principal and income, and for the further reason that this Court lacks jurisdiction in the premises as the situs of the said Trust is in the State of New York, and service has not been perfected upon said Trustees of said Trust nor any of them * * *."

The ABC Corporation thereupon sought leave of the court to interpose a counterclaim against plaintiff which the court authorized. In such counterclaim the ABC Corporation alleged that:

"Upon information and belief that on or about July 1, 1958 and continuing thereafter, and while plaintiff was still in the employ of defendant, he was secretly inducing and wrongfully soliciting individual customers of defendant to abandon their contractual relationships with defendant; to that end, in particular, plaintiff * * * interferred in the contract relations with one Northern Cargo * * * by inducing it to abandon the line-haul transportation services of Defendant * * * and, in addition, thereafter induced other customers of defendant to no longer engage defendant's services, all for the sole purpose of injuring the trade of defendant.

"That as a result of the breach of the said agreement on the part of the said plaintiff, defendant has lost many profitable shipping contracts, and by reason of the foregoing, defendant has been damaged in the sum of Five Thousand ($5,000.00) Dollars.

122

"WHEREFORE, defendant prays judgment that plaintiff take nothing by his said complaint, and that defendant have judgment against plaintiff on its counterclaim for the sum of Five Thousand Dollars ($5,000.00) * * *."

Plaintiff thereupon moved for an order making the trust and the individual trustees thereof parties to the action. This motion was granted, and plaintiff then made service upon the trust and its trustees pursuant to § 540.152 as above described.

After the trust and trustees had been made parties to the action, plaintiff interposed an amended complaint wherein he alleged that during the period in which he was employed by defendant ABC Corporation the trust was doing business in the State of Minnesota; that contributions made to the trust by the ABC Corporation pursuant to the profit-sharing plan embodied therein were for the benefit of plaintiff and other employees of the ABC Corporation and a part of the compensation covered by his employment agreement; and that the trustees of the trust at all times were under the complete direction and control of the ABC Corporation.

In an affidavit submitted in support of the motions made by defendants who had been made additional parties to the action to quash service of process upon them under § 540.152, Irwin Ruby, treasurer of the corporation, set forth the following:

"That he is the Treasurer of ABC Freight Forwarding Corporation * * *.

"That he is also one of the trustees of a profit-sharing plan organized as a trust under the title of 'ABC Freight Forwarding Corporation Employees' Profit-Sharing Plan and Trust' * * * for the purpose of investing profits contributed by the ABC Freight Forwarding Corporation to said Employees' Profit-Sharing Plan and Trust for the benefit of the employees of ABC, and that this is the profit sharing plan alluded to by the plaintiff in his complaint.

＊ ＊ ＊ ＊ ＊

"* * * that Section 10 of said trust indenture excludes the Employer (ABC) from any '* * * right, title or interest in Trust property * * *';

that ABC has no interest in a suit for unpaid benefits brought by the plaintiff since the trustees * * * have agreed under * * * said trust indenture, 'To institute, maintain, defend, compromise, settle, or otherwise dispose of all actions or suits, at law or in equity, in connection with the administration of the Trust, and to pay, settle, compromise, collect, and abandon all claims, or demands in favor of or against the Trustees or the Trust * * *'; that ABC has also divested itself of any duty to pay benefits for any claim maintained by the plaintiff under the terms of Section 12 of said trust indenture which states as follows: '* * * nor does the Employer guarantee the payment of any money which may be or become due to any person hereunder * * *', and by reason of the aforementioned provisions of said trust indenture, your affiant believes the plaintiff has failed to state a cause of action against ABC since in truth the real party in interest is Employees Profit-Sharing Plan and Trust.

"That the Employees' Profit-Sharing Plan and Trust carries out the administrative functions of the trust in the State of New York, * * * the trust indenture reciting the State of New York as the locus for the indenture agreement, the domiciles of the Trustees, and the situs of administration of the trust with all questions pertaining to the trust to be resolved by the laws of the State of New York, and your affiant believes New York is the proper jurisdiction for the determination of a claim by plaintiff for monies owing to him from the Employees Profit-Sharing Plan and Trust, according to the procedure set forth in the trust indenture, conditions to which the plaintiff agreed as an employee when employed by ABC.

"That the Employees' Profit-Sharing Plan and Trust has never done business, carried out any transactions or acts by its trustees or any agents, or represented itself to any employee or interested party that it was present, in the State of Minnesota by virtue of its trust indenture with ABC or the Defendant ABC Freight Forwarding Co. named herein.

"Therefore your affiant contends the ABC Freight Forwarding Corporation * * * is not the real party in interest, has not obligated itself by a profit sharing plan for the benefit of the plaintiff for which it could

respond to a cause of action, and that any claim relative to the trust established for alleged benefits still owing the plaintiff, would incidentally be wrongfully adjudicated by a court having jurisdiction limited to the State of Minnesota * * *."

■ Under § 540.152, above set forth, any group or association with members from without the state, which either directly or through an agent or representative transacts any acts or business within the state, is subject to the jurisdiction of the Minnesota courts in actions arising out of such transactions. Service of process upon such groups or associations in such actions may be made as provided in that section. In State v. Ritholz, 257 Minn. 201, 100 N. W. (2d) 722, it was held that § 540.152 was not limited in its application to *labor unions* to other *labor or employer groups or associations*, and that the term "association" as used therein would apply to a partnership. See, also, Minnesota Wood Specialties, Inc. v. George S. May Co. (D. Minn.) 117 F. Supp. 601. Based thereon it would seem to follow logically that, since the individual trustees who have been named as defendants in this action constitute a "group" from without the state who have been designated to administer the corporation's profit-sharing trust, they would be subject to the provisions of § 540.152 and amenable to service of process thereunder in actions bearing upon the trust's transaction of any acts or business within the state through its agents or representatives.

■ It is also clear that at the time ABC Corporation employed plaintiff to represent it in the St. Paul area it was acting first on its own behalf in fixing plaintiff's wages, hours of work, and required duties; and second as agent or representative of the trust and its trustees in making provision for his participation in the profit-sharing plan embodied in the trust agreement, a copy of which was then delivered to him. That the corporation was then acting as agent or representative of the trust is evidenced not only by the approved method of doing business under the trust agreement but also by the terms and requirements thereof. Under § 11(r) thereof the trustees were authorized to employ such agents as they deemed necessary for the proper administration of the trust. Under § 1(j) the corporation's determination

as to an employee's compliance with eligibility requirements for participation in the trust beneficiary was conclusive upon all persons. Other provisions of the agreement authorized the corporation to exercise its sole judgment in terminating a beneficiary's employment (§ 8); or to dismiss an employee-beneficiary for misconduct where the corporation had reason to believe that he was working for a competitor (§ 8). Under § 11(o) the trustees could require the corporation to furnish full and accurate written information in respect to the name, date, period of employment, compensation, age of any employee and data with respect to retirement, death, leave of absence, or termination of any such employee as well as evidence or information which the trustees considered necessary for the exercise of their powers under the trust. Such factors would seem more than adequate to support a finding that at the time the corporation entered into the employment contract with plaintiff it was acting not only on its own behalf but as representative of the trustees and the trust which the former were administering. Since plaintiff was then a citizen of Minnesota and the duties required of him under the contract were to be performed in Minnesota the transaction would constitute that minimal contact essential for jurisdiction of the Minnesota courts under the principles set forth in McGee v. International Life Ins. Co. 355 U. S. 220, 223, 78 S. Ct. 199, 201, 2 L. ed. (2d) 223, 226, where the court stated:

"* * * It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State. Cf. Hess v. Pawloski, 274 U. S. 352; Henry L. Doherty & Co. v. Goodman, 294 U. S. 623; Pennoyer v. Neff, 95 U. S. 714, 735. The contract was delivered in California, the premiums were mailed from there and the insured was a resident of that State when he died. It cannot be denied that California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims."

Here the agreement between the corporation and the trustees was for the benefit of plaintiff, a Minnesota citizen. Thereunder, the corporation as agent of the trustee represented to plaintiff that he

would be paid certain dividends under a profit-sharing plan as provided in the trust agreement, a copy of which was furnished to him. It is undisputed that such dividends would be paid from assets of the trust. Obviously, the trust would be bound by these representations of its corporate agent and accordingly is as much a party to the agreement as if its trustees had made such representations in person. Clearly, this agreement with plaintiff had that "substantial connection" with the State of Minnesota so as to give the Minnesota courts jurisdiction in any action relating thereto, under the principles of McGee v. International Life Ins. Co. *supra,* and as encompassed within the limitations of § 540.152, above set forth. Beck v. Spindler, 256 Minn. 543, 99 N. W. (2d) 670; Paulos v. Best Securities Inc. 260 Minn. 283, 109 N. W. (2d) 576; The Dahlberg Co. v. Western Hearing Aid Center, 259 Minn. 330, 107 N. W. (2d) 381; Atkins v. Jones & Laughlin Steel Corp. 258 Minn. 571, 104 N. W. (2d) 888.

■ Section 25 of the trust agreement provides that the situs of the trust and all questions pertaining to its validity and administration are to be governed and controlled in accordance with the laws of the State of New York where the trust and trust assets are to be located. This of course would not prevent the Minnesota courts from taking jurisdiction in actions such as this. Similar provisions are common to many contracts, wills, trusts, and like instruments. It means merely that, after the Minnesota courts have acquired jurisdiction in any action involving the trust, the legal issues which may arise therein relating to the validity of the trust or its administration are to be governed by the laws of the State of New York. Likewise, even though the trust assets or properties are not within this state, this would not prevent the Minnesota courts from acquiring jurisdiction over the trust and its trustees. Once such jurisdiction has been obtained in any action involving a Minnesota transaction, a judgment rendered therein should, under well-established common-law principles, be accorded full faith and credit by the state in which the property is located or the trust located. See, Doerr v. Warner, 247 Minn. 98, 76 N. W. (2d) 505.

Affirmed.