**Arthur H. AFTANASE, Appellant,**

v.

**ECONOMY BALER COMPANY, a corporation, Appellee.**

No. 17587.

United States Court of Appeals
Eighth Circuit.

April 2, 1965.

188

O. C. Adamson, II, of Meagher, Geer, Markham & Anderson, Minneapolis, Minn., Mary Jeanne Coyne, of Meagher, Geer, Markham & Anderson, Minneapolis, Minn., for appellant.

Wright W. Brooks, of Faegre & Benson, Minneapolis, Minn., Faegre & Benson and Paul J. McGough, Minneapolis, Minn., for appellee.

Before VAN OOSTERHOUT, BLACKMUN and MEHAFFY, Circuit Judges.

BLACKMUN, Circuit Judge.

We are confronted here with the old and familiar problem of an alleged interstate tort and claimed in personam jurisdiction, by substituted service, over a foreign corporation.

Arthur H. Aftanase, a Minnesota resident and an employee of Eastern Supply Company, was injured in Minneapolis in January 1962 while at work at his employer's scrap metal baling machine. He instituted this diversity suit in the District of Minnesota against Economy Baler Company, the manufacturer of the baler. He would rest liability on breach of implied warranty and on negligence in design and in failure to provide proper safety devices, suitable guards, and adequate warnings.

Service was purportedly effected, first, upon D. W. Stewart, an alleged agent of the defendant in Minnesota, and, next, upon the Secretary of State of Minnesota under the State's "single-act" statute, M.S.A. § 303.13, Subdivision 1(3),[1]

1. Section 303.13
"Subdivision 1. Foreign corporation. A foreign corporation shall be subject to service of process, as follows: * * *

"(3) If a foreign corporation makes a contract with a resident of Minnesota to be performed in whole or in part by either party in Minnesota, or if such foreign corporation commits a tort in whole or in part in Minnesota against a resident of Minnesota, such acts shall be deemed to be doing business in Minnesota by the foreign corporation and shall be deemed equivalent to the appointment by the foreign corporation of the secretary of the State of Minnesota and his successors to be its true and lawful attorney upon whom may be served all lawful process in any actions or proceedings against the foreign corporation arising from or growing out of such contract or tort. Such process shall be served in duplicate upon the secretary of state * * * and the secretary of state shall mail one copy thereof to the corporation * * *. The making of the contract or the committing of the tort shall be deemed to be the agreement of the foreign corporation that any process against it which is so served upon the secretary of state shall be of the same legal force and effect as if served personally within the State of Minnesota."

Paragraph (3) of Subdivision 1 was added to § 303.13 by Laws 1957, ch. 538. No corresponding statute existed in Minnesota prior to this.

and Rule 4(d) (3) and (7), Fed.R.Civ.P. Economy's motion to quash both services was granted and the action was dismissed. Aftanase appeals.

The facts, so far as the present posture of the case is concerned, are not in dispute:

Defendant Economy is a Michigan corporation. It has its principal place of business in Ann Arbor in that state. It manufactures baling equipment there. It has no office, warehouse space, or employee in Minnesota. It has never appointed a Minnesota agent for service of process and has never qualified to do business in Minnesota.

For some years, however, Economy has sold balers to Minnesota residents upon orders solicited by independent Minnesota salesmen working on commission. Each order is subject to approval by the home office. A sale is f.o.b. Ann Arbor. Installation of a baler is handled by the buyer and not by Economy. Economy sells replacement parts for its balers to Minnesota residents. It also sends brochures and parts lists into the state.

The plaintiff's employer Eastern purchased its baler in 1953. Stewart, who is one of the independent salesmen soliciting orders for Economy (but who is not the one who effected the sale to Eastern in 1953), reported the Aftanase accident to Economy.

The trial court ruled that the Minnesota statute was not inapplicable merely because Eastern's baler had been purchased before the enactment of the Minnesota statute; that, although certain Minnesota federal district court cases are at variance with decisions of the Supreme Court of Minnesota, "the issue is a federal one"; that Economy's contacts with Minnesota "were so minimal as not to justify the application" of the statute; and that the maintenance of the action would offend the standard of "traditional notions of fair play and substantial justice" prescribed by International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L. Ed. 95 (1945).

We observe initially:

a. The plaintiff has now withdrawn his claim that the purported service upon salesman Stewart resulted in jurisdiction over the defendant. Instead, he stands on the statute alone.

b. No question is raised as to compliance with the procedural provisions of the Minnesota statute or as to the adequacy of notice to the defendant thereunder.

c. The factual situation here is one where the defendant Economy manufactures its balers in Michigan; where the order for this baler, as for others over the years, was solicited and taken in Minnesota by an independent salesman and then was submitted to Economy in Michigan and accepted there; where Economy shipped the baler f. o. b. Michigan direct to the purchaser; where Economy's tortious act, if there was one, took place in Michigan; and where the plaintiff's injury was sustained in Minnesota.

d. We thus may not be confronted, factually, with a strict "single-act" situation such as where an isolated offending product is the only contact between the defendant and the forum state. And we thus are not propelled into the very center of the controversial area of pure single act interstate situations where courts, on the constitutional issue, appear still to reach varying results. Compare, for example, despite their factual variances, S. Howes Co. v. W. P. Milling Co., Okl., 277 P.2d 655 (1954), and Wisconsin Metal & Chem. Corp. v. De Zurik Corp., 222 F.Supp. 119 (E.D.Wis.1963), with Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc., 239 F.2d 502 (4 Cir. 1956), Chassis-Trak, Inc. v. Federated Purchaser, Inc., 179 F.Supp. 780 (D.N.J.1960), Morgan v. Heckle, 171 F.Supp. 482 (E.D. Ill.1959), and Tyee Constr. Co. v. Dulien Steel Prod. Inc., 62 Wash.2d 106, 381 P.2d 245 (1963). The fact that we are concerned with what is called a single-act statute does not make the present case a single-act case.

 This court has already observed and held, and recently, that whether

due process requirements have been met, so far as jurisdiction in a diversity case over a foreign corporation is concerned, is a question of federal law; that the "more recent federal cases have greatly relaxed the due process limitations on personal jurisdiction"; that if a foreign corporation's business activity in a state is sufficiently extensive by federal standards it is amenable to suit there so far as federal law is concerned, and even upon a cause of action arising outside the state; that the state, however, may impose limitations, beyond those of due process, upon a foreign corporation's amenability to suit in her courts; and that a federal court sitting in a state should observe these further limitations whether the case be one instituted in the federal court or one removed from a state court. Jennings v. McCall Corp., 320 F.2d 64, 67 (8 Cir. 1963); Simpkins v. Council Mfg. Corp., 332 F.2d 733 (8 Cir. 1964); Ark-La Feed & Fertilizer Co. v. Marco Chem. Co., 292 F.2d 197 (8 Cir. 1961). Compare the dissent in Arrowsmith v. United Press International, 320 F.2d 219, 234 (2 Cir. 1963).

It would seem to follow that our task here is to determine (a) whether the Minnesota statute, because of its enactment subsequent to Eastern's purchase of the baler, has application to this case in the first place; (b) what Minnesota has established as the limits of its jurisdiction over foreign corporations under its statute; and (c), if these limitations do not exclude the present suit, whether its inclusion complies with due process under the Fourteenth Amendment. Pulson v. American Rolling Mill Co., 170 F.2d 193, 194 (1 Cir. 1948); Ark-La Feed & Fertilizer Co. v. Marco Chem. Co., supra, p. 201 of 292 F.2d.

1. The statute's application. Economy's argument here appears to be twofold, first, that the statute on its face, because it speaks in the present tense ("if such foreign corporation commits a tort * * * such acts shall be deemed * * * *"), points only to future action and was not intended by the legislature to apply to prior tortious conduct, and,

second, that the statute is unconstitutional if it is employed with respect to past actions, for it then changes the legal effect of those actions.

■ As has already been noted, the baler was sold by Economy to Eastern in 1953. The statute was born in 1957. The plaintiff's injury was in 1962. The mere statement of this chronology should provide the answer to Economy's argument. Economy's negligence, if there was any, existed at the time of manufacture and sale in 1953. But any effect of that negligence upon the plaintiff took place in 1962. Certainly it was then, not before, that his cause of action accrued. And at that time the statute was in existence. This is not retroactive application. It is prospective application, is within the language of the statute, and invokes no problem of retroactivity.

This view of the statute is clearly supported by Beck v. Spindler, 256 Minn. 543, 556–557, 99 N.W.2d 670, 679 (1959). A conditional sale contract was executed in 1956, prior to the statute. Attempts were made after the statute to correct defects in the product. The court held, in response to the retroactivity argument, that the cause of action accrued when there was a failure on the part of the seller to perform and that this was after the statute when it became apparent that the defects would not be corrected. "Under these circumstances, it cannot be said to have been given retroactive effect here".

McGee v. International Life Ins. Co., 355 U.S. 220, at 224, 78 S.Ct. 199, 2 L. Ed.2d 223 (1957), reveals the attitude of the Supreme Court toward a comparable contract situation under a California statute.

Economy's reliance on State ex rel. Clay Equipment Corp. v. Jensen, 363 S.W.2d 666, 669–672 (Mo.Sup.1963), is misplaced. That case concerned an injury inflicted prior to the passage of the Missouri statute and, in addition, pivoted on a provision of the Missouri Constitution. Cf. Nelson v. Miller, 11 Ill.2d 378, 143 N.E.2d 673 (1957); Hell-

riegel v. Sears Roebuck & Co., 157 F. Supp. 718, 719–720 (N.D.Ill.1957); and Cedar Rapids Community School Dist. v. R. F. Ball Constr. Co., 237 F.Supp. 965 (N.D.Iowa 1965). That situation is obviously different from the present one where the plaintiff's injury was received after the Minnesota statute was adopted.

We therefore agree with the district court's conclusion that the statute has application here and, as so applied, does not have improper retroactive effect.

2. Jurisdiction asserted by Minnesota, as delineated by the State's Supreme Court. Often, when this question arises, a federal court does not have the benefit of cases already decided by a state's highest court outlining the limits of its jurisdictional reach for foreign corporations under its substituted service statute. See, for example, this court's own struggle in the determination of Arkansas law in Ark-La Feed & Fertilizer Co. v. Marco Chem. Co., supra, 292 F.2d 197 and 204 (8 Cir. 1961); a matter largely clarified later by the Arkansas Supreme Court in Aldridge v. Marco Chem. Co., 234 Ark. 1080, 356 S.W.2d 615 (1962).

The Supreme Court of Minnesota, however, has issued several opinions on § 303.13, Subdivision 1(3), and has left no doubt of that court's attitude as to the extent and as to the constitutional application of the statute. We have no difficulty in concluding that, if the present case were before Minnesota's Supreme Court, that tribunal would hold that the facts here warrant the application of the statute to Economy, that in personam jurisdiction over the defendant has been effected by the service upon the Minnesota Secretary of State, and that this result is not violative of federal due process.

The five principal cases, all upholding Minnesota jurisdiction, are:

(a) Beck v. Spindler, supra, 256 Minn. 543, 549–556, 99 N.W.2d 670, 675–679 (1959). Although this was a contract case, the court noted, in terms applicable to both the contract and tort aspects of the statute, the recent expansion of "the scope of permissible jurisdiction of a state court over foreign corporations". It observed that "the trend toward greater liberality * * * continues. And well it should", and that whether the required minimum contacts exist in a given case "should depend on the quality and nature of the transaction rather than on the quantity of business done by the foreign corporation. * * * It seems only fair to permit one who has suffered a wrong at the hands of a resident of a foreign state to sue in his own state".

(b) Atkins v. Jones & Laughlin Steel Corp., 258 Minn. 571, 576–580, 104 N.W. 2d 888, 891–894 (1960), was a tort case having to do with an injury sustained by a hauler because of allegedly negligent packaging of a product. The foreign distributor corporation, which shipped the product f. o. b. New York to a Minnesota purchaser, was held to be within reach of the statute. The court repeated its observations made in Beck v. Spindler and held flatly that the tort application of the statute was not violative of the due process clause of the federal Constitution. It also held that a manufacturer "is liable to an ultimate user of his product or to others who may reasonably be expected to be in the vicinity of its probable use for injuries arising from his negligence in the manufacture"; that the place of wrong is in the state where the last event, that is, the injury to the plaintiff, takes place; that if the injury is in Minnesota, the tort then is committed "in whole or in part" in Minnesota even though the "tortious act" occurred outside the state; and that the general objective of the Minnesota statute "is to permit a Minnesota citizen injured here by the wrongful act of a foreign corporation to seek recompense therefor in our courts". It noted that there were decisions elsewhere reaching an opposite result under statutes which speak only in terms of a "tortious act" as distinguished from the commission of a "tort" within the state.

(c) Dahlberg Co. v. Western Hearing Aid Center, Ltd., 259 Minn. 330, 332–335,

107 N.W.2d 381, 383–384 (1961), cert. denied 366 U.S. 961, 81 S.Ct. 1921, 6 L.Ed.2d 1253, presented the situation where the non-resident corporate defendants were buyers, rather than sellers, and the suit was on an open account and notes. The notes were executed, delivered, and payable in Minnesota. An officer of the defendants attended meetings in Minnesota and collaborated in advertising and promotion programs of the plaintiff, and the dominant defendant took an active part in managing distribution and sales.

(d) Adamek v. Michigan Door Co., 260 Minn. 54, 55–56, 108 N.W.2d 607, 608 (1961), concerned an injury sustained because of the alleged negligence of the defendant corporations in the manufacture of a door in Michigan. One of the defendants solicited business by mailing customers price lists from Michigan. The court held that its decision in Atkins controlled this one; that the injury "would provide sufficient contact between the defendant and the forum"; and that "The solicitation of business in Minnesota, even though by mail, provides even greater contacts with this state than those present in Atkins * * *."

(e) Ehlers v. United States Heating & Cooling Mfg. Corp., 267 Minn. 56, 60–62, 124 N.W.2d 824, 826–827 (1963), concerned damage to Minnesota property as a result of a boiler explosion. Third party proceedings against the foreign corporation manufacturer of the boiler were instituted by substituted service. Three successive sales (at least two of them outside Minnesota) of the boiler took place before it reached the installing Minnesota plumbing company. The court noted its prior decisions and held that, in the absence of "specific controlling authority with respect to Federal constitutional limitations * * * it remains our opinion that service upon a foreign corporation in the manner prescribed is effectual to confer jurisdiction in cases such as this. * * * [T]he product here involved was manufactured by appellant corporation for use by the general public. It is not contended that

the area of foreseeable use of the product was so limited as to exclude the State of Minnesota".

There are additional Minnesota cases concerning other statutes of the state comparable to § 303.13, Subdivision 1(3), and in these, too, the same broad and liberal attitude has been displayed. Paulos v. Best Securities, Inc., 260 Minn. 283, 291–292, 109 N.W.2d 576, 582 (1961) [M.S.A. § 80.14, Subdivision 1]; Brooks v. International Bhd. of Boilermakers, 262 Minn. 253, 262–263, 114 N.W.2d 647, 653 (1962) [M.S.A. § 540.152]; Danov v. ABC Freight Forwarding Corp., 266 Minn. 115, 124–126, 122 N.W.2d 776, 783–784 [M.S.A. § 540.152].

On the other hand, the Minnesota court in one case has quashed substituted service where it concluded that the required minimum contacts were not present. Fourth Northwestern Nat'l. Bank v. Hilson Industries, Inc., 264 Minn. 110, 117 N.W.2d 732 (1962). This was a suit against a non-resident corporate buyer on notes where, the court said, "The only connection with Minnesota in this case, however remote, is the fact that the notes are payable here".

We think it apparent from these cases, as we have stated above, that the Supreme Court of Minnesota, upon the facts before us, would uphold the substituted service upon Economy. The present facts are close to those of Adamek, are stronger than those of Atkins, and are far stronger than those of Ehlers.

Economy really does not disagree with this conclusion as to what the Minnesota court would hold. It takes the position, instead, that when the Minnesota statute is so construed, federal due process is violated. This same approach was intimated by the trial court.

■■ 3. Due process. Although the Minnesota court, by flat language in Beck and Atkins, and by its holdings in Dahlberg, Adamek, and Ehlers, has upheld the state's statute on due process grounds, the constitutional issue is a federal one and we have the duty to make our independent inquiry and determination.

The Minnesota decisions, so far as they bear upon due process under the Fourteenth Amendment, are of weight but they are not binding upon a federal court. Pulson v. American Rolling Mill Co., supra, p. 194 of 170 F.2d; Ark-La Feed & Fertilizer Co. v. Marco Chem. Co., supra, p. 201 of 292 F.2d; Vasser v. Raines, 274 F.2d 369, 371 (10 Cir. 1959), cert. denied 362 U.S. 982, 80 S. Ct. 1069, 4 L.Ed.2d 1016; 36 C.J.S., Federal Courts, § 169(4).

This court heretofore has not had occasion to view the Minnesota statute and its application under the glare of federal due process. The United States District Court for the District of Minnesota has examined it on several occasions but none of these decisions has been appealed.

There are two primary cases where the Minnesota federal district court has held that the substituted service statute, as applied to the facts, denied federal due process. The first is Mueller v. Steelcase, Inc., 172 F.Supp. 416 (D.Minn.1959, Judge Nordbye), decided before Beck and its successor cases. The plaintiff brought suit for injuries sustained because of a broken chair spindle; he alleged faulty design, negligent construction and breach of implied warranty. He had purchased the chair from a Minnesota dealer which had bought it from the defendant, a Michigan manufacturer. The defendant in turn had acquired the spindle as a part from another manufacturer. The defendant had one salesman who entered Minnesota and took some orders but it received most of its Minnesota orders direct from retailers. Orders were filled by prepaid freight. The defendant had no control over the dealer and no contact with the consumer. The court characterized the defendant's business contacts in Minnesota as "extremely scanty", observed that the defendant "performed no tortious act in Minnesota", and held that the statutory declaration "that the proximate result in Minnesota of a tortious act committed in another State by this defendant constitutes the doing of business in this State cannot be reconciled with the Federal constitutional rights accorded a foreign corporation which has such meager contacts and connections in this State". The Minnesota Supreme Court, in Atkins, supra, pp. 893–894 of 104 N.W.2d, noted that Mueller followed those decisions where the statute required tortious conduct within the forum "notwithstanding that our statute requires only" that the foreign corporation "commits a tort" in whole or in part in Minnesota; it went on to observe that any merit in protecting a foreign corporation was outweighed by the general objective of the statute. The implication is that the Supreme Court of Minnesota would have decided Mueller the other way and feels that the federal court's reliance on "tortious act" statutes, as contrasted with "tort" statutes, is the source of difficulty.

The second primary case is Pendzimas v. Eastern Metal Products Corp., 218 F. Supp. 524 (D.Minn.1961, Judge Nordbye). The suit was for personal injuries sustained when an electric cooking device exploded. The plaintiffs had purchased the product from a Minnesota retailer. The defendant, a New York and Arkansas manufacturer, shipped it, in response to a mail order, to a Minnesota wholesaler by collect freight. The court noted that the question was substantially the same as that presented in Mueller and that in the interim the Supreme Court of Minnesota had decided Beck, Atkins, and Dahlberg. Despite these decisions, and although recognizing, p. 527, that "No doubt due process may be sustained where there is a single act transaction", the court adhered to the views it expressed in Mueller and found it difficult to find support for the fiction that "by reason of a single sale * * * a negligent foreign corporation, *without more*, has * * * subjected itself to process herein because here the last event took place which would make it liable for its tort". It felt that Atkins was out of harmony with Hanson v. Denckla, 357 U.S. 235, 251, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958),

and it placed reliance upon Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc., supra, 239 F.2d 502 (4 Cir. 1956).

Other Minnesota federal cases where substituted service was quashed are: (a) Bard v. Bemidji Bottle Gas Co., 23 F.R. D. 299 (D.Minn.1958, Judge Nordbye). The court seemed to recognize the propriety of substituted service when the foreign corporation defendant "committed a tort in whole or in part in Minnesota against a Minnesota resident". It held, however, that when an explosion occurred which injured the plaintiffs no such tort was committed by the foreign corporation-third party defendant which furnished bottle gas to the defendant-third party plaintiff-Minnesota suppliers. (b) Dahlberg Co. v. American Sound Products, Inc., 179 F.Supp. 928 (D.Minn. 1959, Judge Nordbye), was a contract case which the court dismissed as to one defendant. It recognized the breadth of language of the Minnesota statute, observed that under certain circumstances substituted service "may be sufficient" for personal jurisdiction, and held that if goods are sent into the state for resale purposes without other contacts, such jurisdiction over a non-resident foreign manufacturing corporation cannot constitutionally be obtained, and that incidental transactions, such as warranties and point-of-sale advertising given by appliance manufacturers to dealers and customers, do not effectively enlarge contacts. (c) Thiele Eng'r. Co. v. Weldon Farm Products, Inc., 224 F.Supp. 809 (D.Minn.1963, Judge Donovan), was an action on an account stated. In response to the defendant's counterclaim alleging breach of warranty, the plaintiff attempted substituted service on a Texas corporation as third-party defendant. The court emphasized the contract nature of the case and the absence of privity. (d) Williams v. Connolly, 227 F.Supp. 539 (D.Minn. 1964, Judge Larson). A California resident sued for injuries received in an explosion in a Minnesota motel. The defendants were the motel owners and, among others, the foreign corporation-

manufacturer of a heater. Service under the statute on the manufacturer was quashed because "we have not been presented with evidence from which we can make an analysis of the contacts * * * or of the applicability of the contract provisions of the Minnesota statute". Judge Larson, however, in a detailed opinion, noted that the action necessarily sounded in contract because the tort side of the statute required that any tort be committed against a Minnesota resident; that Ewing v. Lockheed Aircraft Corp., infra, 202 F.Supp. 216 (D.Minn.1962), provided a persuasive analogy; that privity was on the wane in Minnesota; that "the Minnesota Supreme Court has indicated that it will assert its maximum jurisdiction"; and that his "view of the limitations on State jurisdiction imposed by the due process clause differ[ed] from others expressed by this Court". He disagreed with the result reached in Erlanger Mills, supra. He found it "difficult to see how due process would be violated by requiring the defendant corporation, which shipped its products directly to the plaintiff, to defend a lawsuit concerning those products in the State where they were sent".

On the other hand, there are Minnesota federal cases where substituted service has been upheld: (a) McMenomy v. Wonder Bldg. Corp. of America, 188 F.Supp. 213 (D.Minn.1960, Judge Donovan), concerned a distributorship contract executed by the plaintiffs in Minnesota and mailed to the defendant in Chicago. On occasion the defendant's agents called on Minnesota customers with the plaintiffs and carried on negotiations and adjusted claims in Minnesota. (b) Hutchinson v. Boyd & Sons Press Sales, Inc., 188 F.Supp. 876 (D. Minn.1960, Judge Donovan). One defendant sold a punch press to the Minnesota employer of the injured plaintiff. Another defendant assembled the press. The court, citing Beck and Atkins, noted that the place of the tort is where the injury occurs; that, on the allegations, the defendants' conduct was within the statute; and that an isolated act may

constitute doing business in Minnesota. (c) Ewing v. Lockheed Aircraft Corp., supra, 202 F.Supp. 216 (D.Minn.1962, Judge Nordbye), was an action under the Indiana Wrongful Death Act and arose out of a crash in Indiana of a Northwest Airlines plane manufactured by Lockheed. Service on Lockheed was under the statute. The court held that the requirements of due process were satisfied. It relied in particular upon Lockheed's maintenance in Minnesota of field service representatives, the substantiality of the California contract between Lockheed and Northwest, and the partial performance of the contract in Minnesota, as distinguished from "the mere isolated performance of an incidental phase of a contract within this State". It granted the benefit of the statute even to a nonresident of Minnesota. (d) Carlson v. Chatfield Mach. Co., 228 F.Supp. 162 (D.Minn.1964, Judge Donovan), was an action for wrongful death of a Minnesota decedent killed when struck by a board alleged to have been negligently ejected by a machine saw. The decedent's employer was a Minnesota corporation. The defendant was a foreign manufacturer. The case thus is strikingly like the present one. The court felt that the defendant's activity in Minnesota was not of such little consequence as to avoid the liberal trend toward sustaining service. (e) Haldeman-Homme Mfg. Co. v. Texacon Indus., Inc., 236 F.Supp. 99 (D.Minn.1964, Judge Larson), was an action for false representations and breach of contract. The defendant corporation advertised sale of its folding door division. The plaintiff Minnesota corporation replied. The negotiations resulted in purchase by the plaintiff. All division assets were then moved to Minnesota. None of the negotiations were in Minnesota. The court held, after reference to some specific factors, that selling a going business to a Minnesota resident with knowledge that its assets and operations would be moved to Minnesota created sufficient contacts. (f) United Barge Co. v. Logan Charter Service, Inc., 237 F.Supp. 624 (D.Minn.1964, Judge

Larson), was an admiralty case for loss of a cargo. The court held that the Minnesota statute could be applied in admiralty and that although the libelants were foreign corporations they were, on the facts, residents for purposes of the statute.

Thus, we have Minnesota federal district court cases where substituted service has been quashed and others where it has been upheld. While facts, of course, necessarily play an important part, we are not convinced that these cases as a group are entirely consistent. Indeed, Judge Larson has specifically indicated, in Williams, p. 544 of 227 F.Supp., that they are not.

There is little which remains unsaid about the well known and frequently cited United States Supreme Court cases on the subject. Perhaps we may safely observe that:

(a) International Shoe Co. v. Washington, supra, 326 U.S. 310, 66 S.Ct. 154 (1945), brought to a head the new approach or, as Mr. Justice Burton described it in his separate opinion in Polizzi v. Cowles Magazines, Inc., 345 U.S. 663, 672, 73 S.Ct. 900, 97 L.Ed. 1331 (1953), "the enlightened rationale". The Court, 326 U.S. pp. 316–319, 66 S.Ct. p. 158, emphasized "certain minimum contacts * * * such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' Milliken v. Meyer, 311 U.S. 457, 463 [61 S.Ct. 339, 85 L.Ed. 278]", and stressed corporate activity, a standard of reasonableness in the light of the existing contacts, and inconvenience as a relevant factor. Continuous and systematic activity giving rise to the liability sued on was said to present a clear case for jurisdiction but "the casual presence of the corporate agent" in a state or his conduct of an isolated item was not enough with respect to a cause of action unconnected with the activities there. The boundary line "cannot be simply mechanical or quantitative". Rather, it is "the quality and nature of the activity in relation to the fair and orderly administration of the laws". Ac-

tivity gives rise to obligations and, to the extent these are connected with activity within the state, responsiveness is not undue.

(b) Travelers Health Ass'n v. Virginia ex rel. State Corporation Comm'n., 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154 (1950), reinforced the doctrine of International Shoe in the insurance area. The Court emphasized the state's interest in faithful observance of the insurer's certificate obligations, systematic and wide delivery following solicitation, the inconvenience for a certificate holder in reaching the insurer elsewhere, and the availability of the state courts to the insurer, and concluded that the standard of fair play and substantial justice was met.

(c) Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L. Ed. 485 (1952), presented the situation of a foreign corporation performing a limited portion of its general business in Ohio. The cause of action was not one arising in that state or related to the defendant's activity there. The Court held that federal due process did not compel Ohio to open its courts to the case but neither did it prohibit the state from granting relief against the foreign corporation. Here, again, the Court emphasized "general fairness to the corporation" and observed that the "amount and kind of activities * * * so as to make it reasonable and just to subject the corporation to the jurisdiction of that state are to be determined in each case".

■ (d) McGee v. International Life Ins. Co., supra, 355 U.S. 220, 78 S.Ct. 199 (1957), provided further development in the insurance area. The Court noted its abandonment of "consent", "doing business", and "presence", as standards for measuring state judicial power over foreign corporations, a "clearly discernible" trend "toward expanding the permissible scope of state jurisdiction", and the fact this was partially attributable to transformation of our national economy. The existence of a single insurance contract with a sole California resident was sufficient for purposes of due process and the contract "had substantial connection" with the state. The state has a manifest interest in providing an effective means of redress for its residents; the insured otherwise would be at a severe disadvantage.

(e) Hanson v. Denckla, supra, 357 U. S. 235, 78 S.Ct. 1228 (1958), announced the existence of a limitation. The Court referred, 357 U.S. p. 251, 78 S.Ct. p. 1238, to the flexible standard of International Shoe but "it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts". It stressed the necessity of minimum contacts and the absence of these in that Florida case which concerned a Delaware trust and a cause of action not arising out of an act done or transaction consummated in Florida. "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State".

These Supreme Court cases are reviewed in detail in 1 Barron & Holtzoff, Federal Practice & Procedure (Wright Edition, 1960) § 179, and in 2 Moore, Federal Practice Par. 4.25 [3] and [4], and there is a provocative summary proposed in the latter work, Par. 4.25 [5].[2]

2. "Based as they are on notions of fairness and reasonableness, the Supreme Court decisions do not permit a simple generalization of the rule pertaining to in personam jurisdiction over foreign corporations. If there are substantial contacts with the state, for example a substantial and continuing business, and if the cause of action arises of the business done in the state, jurisdiction will be sustained. If there are substantial contacts with the state, but the cause of action does not arise out of these contacts, jurisdiction may be sustained. If there is a minimum of contacts, and the cause of action arises out of the contacts, it will normally be fair and reasonable to sustain jurisdiction. If there is a minimum of contacts and the cause of action does not arise out of the contacts, there will normally be no basis of jurisdiction, since it is difficult to establish the factors necessary to meet the fair and reasonable test." [footnotes omitted]

We also think it is fair to say that these five Supreme Court cases establish only general and not precise guidelines. Perhaps they purposely do no more than this. We observe, however, that, at one time or another in the opinions, three primary factors, namely, the quantity of the contacts, the nature and quality of the contacts, and the source and connection of the cause of action with those contacts, are stressed, and that two others, interest of the forum state and convenience, receive mention.

 Benguet states, p. 445 of 342 U.S., 72 S.Ct. 413, that each case is to be resolved in the light of its own facts. We therefore attempt to apply the five cases' general guidelines to the presently accepted facts of the case before us.

 In so doing, we find, first, at least some quantity of contacts of Economy with Minnesota and not a single and solitary sale. Although Economy had not shipped balers by the hundreds into Minnesota, it had shipped them into the state for a number of years and on a number of occasions. Stewart himself obtained orders for three or four a year and he was not the only solicitor who promoted Economy's baler. If these sales were not "continuous and systematic" they were not isolated either. Economy also sold replacement parts for its Minnesota balers and sent brochures and parts lists into the state. A machine of this kind does not possess a wide market and, when purchased, a baler lasts about thirty years. The quantity of contacts is thus, realistically, not insignificant. Second, we find an element of quality in the contacts. The baler apparently was a fairly substantial device. It baled metal. It was powerful and contained potent possibilities of harm if negligently designed or manufactured. Economy's balers, including this particular one, were shipped by it directly into the state and directly to the customer. There was no intervening dealer. Economy knew of the baler's destination and of the Minnesota identity of the purchaser. It voluntarily placed its product on the Minnesota market, derived benefit therefrom, received the protection of Minnesota laws, and reasonably could have anticipated that this activity would have consequences in the state. See Gray v. American Radiator & S.S. Corp., 22 Ill.2d 432, 176 N.E.2d 761, 766 (1961). These contacts, if not so direct as those of certain other cases, are affirmative in nature. The independent solicitors actively sought sales for Economy and Economy accepted their continuing orders. This was voluntary, affirmative economic activity of substance. See Note, 43 Minn.L.Rev. 569, 576 (1959), and Note, 45 Minn.L.Rev. 127, 131–32 (1960). Third, there is a connection between Economy's obligation and its Minnesota contacts. While one may argue that the obligation did not arise from a "tortious act" committed by it in Minnesota, the obligation nevertheless arose in Minnesota where and when the injury occurred. The baler was sold for use in Minnesota and, when used there, injured Aftanase, a Minnesota resident. Fourth, Minnesota has an interest in providing a forum for an injured resident. The interest may not be so significant as in insurance cases but it is not insignificant or absent. The fifth factor of convenience carries little persuasive weight here either way.

The Supreme Court has certainly not indicated that all five of these factors must be present in substantial degree for jurisdiction to be constitutionally effected. We conclude that the use in this case of the Minnesota substituted service procedure on this defendant foreign corporation is consistent with fair play and substantial justice and does not violate federal due process. We here have more than the minimum contacts which the Supreme Court has prescribed as the standard and we see nothing unreasonable in requiring the defense of the suit in a Minnesota tribunal. It cannot be said, incidentally, that this result is unanticipated. See Note, 42 Minn. L.Rev. 909, 927 (1958).

We, of course, make no forecast as to the outcome of a trial on the merits.

The case is reversed and remanded for further proceedings.