**NATIONAL EQUIPMENT RENTAL, LTD., Plaintiff,**

v.

**Richard SANDERS and Betty Sanders, Defendants.**

**NATIONAL EQUIPMENT RENTAL, LTD., Plaintiff,**

v.

**Robert F. KUNS, Marvin C. Kuns and Grace I. Kuns, Defendants.**

Nos. 67 C 281, 67 C 311.

United States District Court
E. D. New York.

July 12, 1967.

Harry M. Weisberg, Elmont, N. Y. (Barry Feltingoff, Elmont, N. Y., of counsel), for plaintiff.

Bertram Zweibon, New York City (Bernard L. Seligman, New York City, of counsel), for defendants.

## MEMORANDUM

DOOLING, District Judge.

Some time before February 1966, plaintiff had leased certain vehicular equipment to one Vincent Kemp in California. Thereafter plaintiff repossessed the equipment and, under date of February 18, 1966, leased part of it to defendant Robert F. Kuns (whose wife Loretta Kuns co-signed the lease); defendants Marvin and Grace Kuns, under date of February 5, 1966, guaranteed Robert Kuns' lease payments. Under date of June 8, 1966, plaintiff leased other of the

758

Kemp equipment to defendant Richard Sanders (whose wife, defendant Betty Sanders, guaranteed her husband's lease payments). Some time between July 28 and August 3, 1966, it appears that the State Board of Equalization of California served on defendant Richard Sanders a "Notice to Withhold" advising Sanders that Kemp was delinquent to the extent of $81,775.22 (inclusive of interest and penalty) in paying amounts required to be paid under State and local sales and use tax laws; the notice required Sanders for the next 60 days not to transfer any property of Kemp's that he had without the Board's consent, and required Sanders also forthwith to advise the Board of all property of Kemp's that he had.

Thereafter, under date of November 10, 1966, with plaintiff's consent, defendant Robert Kuns transferred to defendant Richard Sanders the equipment theretofore leased Kuns, and Loretta Kuns, Marvin Kuns, Grace Kuns and Betty Sanders also signed the instrument of transfer.

Claiming that the State of California declined, because of the Kemp tax debt, to issue licenses required for the use of the leased vehicles in California, Sanders stopped making payments on the leases. Plaintiff on March 28, 1967, filed suit in this Court against Richard Sanders and his wife and on April 6, 1967, filed suit in this Court against Robert Kuns and Marvin and Grace Kuns.

All the defendants are citizens and residents of California and plaintiff is a Delaware corporation; plaintiff's only and principal place of business is in the Eastern District of New York. Jurisdiction was obtained under the following clause contained in the leases, transfer and assumption agreement, and guaranty:

"21. THIS AGREEMENT SHALL BE DEEMED TO HAVE BEEN MADE IN NASSAU COUNTY, NEW YORK, REGARDLESS OF THE ORDER IN WHICH THE SIGNATURES OF THE PARTIES SHALL BE AFFIXED HERETO, AND SHALL BE INTERPRETED, AND THE RIGHTS AND LIABILITIES OF THE PARTIES HERE DETERMINED, IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, AND AS PART OF THE CONSIDERATION FOR THE LESSOR'S EXECUTING THIS LEASE, LESSEE HEREBY AGREES THAT ALL ACTIONS OR PROCEEDINGS ARISING DIRECTLY OR INDIRECTLY FROM THIS LEASE SHALL BE LITGATED ONLY IN COURTS HAVING SITUS * WITHIN THE STATE OF NEW YORK, AND LESSEE HEREBY CONSENTS TO THE JURISDICTION OF ANY LOCAL STATE OR FEDERAL COURT LOCATED WITHIN THE STATE OF NEW YORK, AND WAIVES THE PERSONAL SERVICE OF ANY AND ALL PROCESS UPON THE LESSEE HEREIN, AND CONSENTS THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE BY CERTIFIED OR REGISTERED MAIL, RETURN RECEIPT REQUESTED, DIRECTED TO THE LESSEE AT THE ADDRESS HEREINABOVE STATED: AND SERVICE TO MADE SHALL BE COMPLETE TWO (2) DAYS AFTER THE SAME SHALL HAVE BEEN POSTED AS AFORESAID."

On April 18, 1967, Richard Sanders and his wife sued plaintiff in the United States District Court for the Eastern District of California, and thereafter Robert, Marvin and Grace Kuns sued plaintiff in the United States District Court for the Southern District of California; the suits seek to recover of plaintiff the amounts paid under the leases on the ground that the consideration for the payments (usable vehicles) had failed, and on the ground that the leases, transfer agreement and guaranty were procured by fraud in that plaintiff knew when it entered into the transactions that the State Board had a lien on

---

* The transfer agreement reads "suits," the guaranty reads "a situs."

the vehicles for the Kemp tax debt. On the motion of plaintiff (defendant in that case) Sanders v. National Equipment Rental, Ltd., was by order of June 13, 1967, transferred from the Eastern District of California to this Court, and, similarly, the Kuns case has now been ordered to be transferred to this Court.

Defendants move to dismiss (i) on the ground that there is no diversity of citizenship, (ii) on the ground that to maintain the suit here deprives them of due process, (iii) on the ground that service under the quoted clause is bad, and (iv) on the ground that an indispensable party whose presence would destroy diversity has been omitted, and, alternatively, they move (v) to transfer to California for the convenience of the parties and witnesses. The motions are in all respects denied without prejudice to the renewal of the alternative motion to change venue if the development of the case indicates that the interests of justice require reconsideration of the propriety of transfer.

Defendants' objections are linked to the fact that although their contracts were with plaintiff their business was solicited and their discussions conducted in California with employees of a California corporation which is a wholly-owned subsidiary of plaintiff and bears the name "National Equipment Rental, Ltd. of California." Defendants challenge diversity by arguing that the plaintiff must be identified in citizenship with the subsidiary through which it acted. Defendants argue alternatively that the California corporation is an indispensable party, the joinder of which will destroy diversity, thus again requiring a dismissal on the ground of diversity.

■ Defendants rely for both arguments on Niles-Bement-Pond Co. v. Iron Moulders' Union, 1920, 254 U.S. 77, 41 S.Ct. 39, 65 L.Ed. 145. There the question was of the realignment of an indispensable party and the Court held that realignment was required and that it destroyed diversity, requiring a dismissal. The California corporation is not here an indispensable party. Defendants recognized that much when they sued plaintiff alone in the California federal courts. Plaintiff states, without contradiction, that the California subsidiary is an incorporated salesman, and that it has no power to bind the parent, which centralizes all its leasing controls in the Eastern District of New York. The California corporation's absence from these cases does not prevent defendants from obtaining against plaintiff the same relief for the alleged fraud that they would be entitled to against the California company; if that company cannot disclaim any fraudulent acts of its servants acting in the scope of their authority, neither can plaintiff deny its responsibility for the alleged fraud of the California corporation which performed its sales agency service through those same persons' acts. It is not necessary at this time to consider whether defendants are, in addition, free to sue the California company for fraud in the California state court notwithstanding paragraph 21 quoted above.

■ Nothing of substance is advanced to support the argument that plaintiff must be identified in citizenship with its subsidiary. The suggestion that plaintiff cannot, as a Delaware corporation, sue a Californian in a New York federal court (Cf. Seaboard Rice Milling Co. v. Chicago, R. I. & P. Ry., 1926, 270 U.S. 363, 46 S.Ct. 247, 70 L.Ed. 633) fails because it has been adequately shown that plaintiff's sole business office and its principal place of business is in the Eastern District of New York, so that it is a citizen of New York [28 U.S.C. § 1332(c)] if not, in its character of plaintiff, a "resident" of New York purely by virtue of the language of 28 U.S.C. § 1391 (c) (for that section has been treated as equating corporate "doing business" with residence only in the case of defendant corporations, see Robert E. Lee & Co., v. Veatch, 4th Cir. 1962, 301 F.2d 434, 96 A.L.R.2d 619; see further, Lumbermens Mut. Cas. Co. v. South Portland Engineering Co., S.D.N.Y.1966, 252 F.Supp. 149, commenting on earlier diverse hold-

ings in the Southern District of New York and elsewhere). The "citizenship" arising from having the principal place of a corporate business in a particular state appears still to be sufficient to meet the "residence" requirement for venue purposes of 28 U.S.C. § 1391(a). In Section 1391(a) the "residence" of natural persons restricts venue to the state of citizenship (and to a particular district within a particular state), since under the Fourteenth Amendment natural persons are citizens of the states in which they reside; analogously, before the predecessor of Section 1391(c) was enacted, the predecessor of Section 1391(a) confined the corporate plaintiff to the state of its incorporation as the sole state of its citizenship and, therefore, of its "residence." Cf. Suttle v. Reich Bros. Const. Co., 1948, 333 U.S. 163, 68 S.Ct. 587, 92 L.Ed. 614. That identification, in Section 1391(a), of corporate citizenship with corporate venue right should endure despite the limited reference of Section 1332(c) to the removal section and its omission of any reference to the venue section.

But in any case, defendants could and did, at least subject to change of venue under Sections 1404 and 1406, waive their threshold venue objection so far as it is equated in effect with an objection to jurisdiction. See Neirbo Co. v. Bethlehem Shipbuilding Corp., 1939, 308 U.S. 165, 174–175, 60 S.Ct. 153, 84 L.Ed. 167.

The cases cannot, in view of National Equipment Rental, Ltd., v. Szukhent, 1964, 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed. 2d 354 and National Equipment Rental, Ltd. v. Reagin, 2d Cir. 1964, 338 F.2d 759, be considered to present any denial of due process, or any invalidity or inefficacy in the service of process; that, however, is not decisive of whether trial can validly be required to take place in this Court.

The last, and alternative, contention is that the cases should be transferred to California for the convenience of the parties and witnesses and in the interests of justice. A comparable motion failed in this Court in another case (National

Equipment Rental, Ltd. v. Centra Cast Co. Inc., 64 C 580, June 2, 1966, Opinion of Rosling, D. J.) and, as noted above, two United States District Courts in California have now transferred to this Court the actions that the defendants commenced in those Courts.

There is, probably, no final and single answer to the vexatious question of the validity of so much of clause 21 of plaintiff's lease as seeks to confine litigation—presumably including trial—to Courts (state or federal) sitting in this State. The question is not the validity of the subjection to jurisdiction here. *Szukhent* and *Reagin* settle that. But in *Szukhent* the Court noted that (375 U.S. at 313, 84 S.Ct. at 413, footnote 2) "No questions of * * * venue are presented. * * * Venue in the United States District Court for the Eastern District of New York has not been contested." The present question is, then: may the parties to an action by agreement made in advance of the existence of any claim or threat of litigation nominate certain courts as their exclusive resort, "ousting" all other courts, and, thus, preclude unrestricted use of Sections 1404 and 1406 by the parties or the Court. The clause quoted from the lease leaves a relatively meaningless choice among the four federal courts sitting in this State, but it would appear not in any way to restrict venue rights in the Courts of the State of New York, although, of course, under N. Y.C.P.L.R. §§ 503(c), 508 and 509 the election of venue is as a practical matter (apart from the clause) lodged with plaintiff and suited to its convenience. Beyond that, N.Y.C.P.L.R. § 501 now requires a written agreement fixing the place of trial to be given effect, subject only to the Court's power to change venue if an impartial trial cannot be had in the stipulated county (N.Y.C.P.L.R. §§ 501, 510, subd. 2).

New York had not earlier been inhospitable to agreements restricting trial to a rationally chosen venue in New York (see Benson v. Eastern Bldg. & Loan Ass'n, 1903, 174 N.Y. 83, 86–87, 66 N.E. 627; Greve v. Aetna Live-Stock

Ins. Co., 81 Hun, 28, 30 N.Y.S. 668; Syracuse Plaster Co., Inc. v. Agostini Bros. Bldg. Corp., Onondaga Co. 1938, 169 Misc. 564, 7 N.Y.S.2d 897), but it differentiated them sharply from clauses that altogether ousted the New York Courts of a jurisdiction they would otherwise have. See, e. g., Kyler v. United States Trotting Ass'n, 4th Dept. 1961, 12 A.D.2d 874, 210 N.Y.S.2d 25; Arsenis v. Atlantic Tankers Ltd., N.Y. Co. 1963, 39 Misc.2d 124, 240 N.Y.S.2d 69. Cf. Home Ins. Co. of New York v. Morse, 1874, 87 U.S. (20 Wall.) 445, 22 L.Ed. 365; Doyle v. Continental Ins. Co., 1877, 94 U.S. 535, 24 L.Ed. 148. The underlying notion, although it has at least a suggestive historical association with the obsolete principle that agreements to arbitrate are illicit as ousting the courts of jurisdiction (see Benson v. Eastern Bldg. & Loan Ass'n, supra), seems to be that the Courts will not countenance what may turn out to be waivers of the right to obtain justice by validating contracts that restrict the parties to tribunals in which justice cannot be assured. Phrased in permissive form, the central idea seems to be that men may enforceably contract to submit their controversy to a named tribunal if the particular contract is not unreasonable or offensive to public policy. Cf. Central Contracting Co. v. Maryland Casualty Co., W.D.Pa.1965, 242 F. Supp. 858, 861, aff'd, 3rd Cir. 1966, 367 F.2d 341; Daley v. People's Bldg., Loan & Saving Ass'n, 1901, 178 Mass. 13, 59 N.E. 452. While, perhaps incongruously, one may enforceably agree to arbitrate abroad (Gilbert v. Burnstine, 1931, 255 N.Y. 348, 174 N.E. 706, 73 A.L.R. 1453; Lowry & Co. Inc. v. S. S. Le Moyne D'Iberville, S.D.N.Y.1966, 253 F.Supp. 396, appeal dismissed in absence of appealable order, 2d Cir. 1967, 372 F.2d 123) it may yet be true that a contractual commitment to an alien court, although of a civilized country, may be of doubtful validity. See 6A Corbin, Contracts 1962, 477–484, § 1445; Cf. Restatement, Contracts, § 558; Wood & Selick v. Compagnie Generale Transatlantique, 2d Cir. 1930, 43 F.2d 941, 942; L. Hand, concurring, Krenger v. Pennsylvania R. Co., 2d Cir. 1949, 174 F.2d 556, 560; See Annotation, 1957, 56 A.L.R.2d 301.

It is easy enough here to say that the clause is good in the public policy perspective when it comes up for review in a New York Federal Court simply because it does not happen to oust any New York State or New York Federal Court of jurisdiction, and it does not collide with any local statutory policy. Cf. Boyd v. Grand Trunk Western R. Co., 1949, 338 U.S. 263, 70 S.Ct. 26, 94 L.Ed. 55; Knott v. Botany Worsted Mills, 1900, 179 U.S. 69, 21 S.Ct. 30, 45 L.Ed. 90; Indussa Corp. v. S. S. Ranborg, 2d Cir. 1967, 377 F.2d 200. Note Central Contracting Co. v. Maryland Casualty Co., supra, Daley v. People's Bldg., Loan & Saving Ass'n, supra.

■■ Nothing in the facts presently brought forward indicates that the choice-of-court agreement between these parties will operate oppressively or unreasonably whether viewed directly from the viewpoint of one of the courts provided for in the clause, or viewed by testing the reasonableness of its "ouster" of other Courts, e. g., those of California, for it is far from clear that the issues really involved are complex, or that they will really depend on oral evidence localized in California. Nevertheless, it cannot be held that such a clause as paragraph 21 of the lease can, simply because it is not per se invalid, preclude resort to the change of venue sections of the statute. Cf. Cerro de Pasco Copper Corp. v. Knut Knutsen, O.A.S., 2d Cir. 1951, 187 F.2d 990. A superficial and semantic argument would be that agreeing to litigate in the federal courts in New York commits the litigation to courts which have the power to change venue in the interest of justice. A more real analysis is that, the parties having agreed that it is a Court that shall do justice between them, they cannot be suffered by their contract to require the Court to refrain from doing what it may conclude is in the interest of justice between the parties. The Court must, no doubt, give some weight to the agreement on place

**762**

of trial in determining all transfer of venue questions, but it may not treat the parties' agreement on venue as depriving it of the power to change venue if the interests of justice require a transfer.

The motions must be denied, with leave to renew the motion to change venue in the indicated circumstances.