**JENO'S, INC., Plaintiff,**

v.

**The TUPMAN THURLOW COMPANY, Defendant.**

**No. 5–71 Civ. 95.**

United States District Court,
D. Minnesota,
Fifth Division.

Oct. 30, 1972.

Hammer, Halverson, Watters & Bye, by Donald L. Bye, Duluth, Minn., for plaintiff.

Fryberger, Buchanan, Smith, Sanford, Frederick, by John T. Oswald, Duluth, Minn., for defendant.

NEVILLE, District Judge.

Plaintiff has instituted a breach of contract suit against defendant alleging that in several respects of purchase of bulk Indian shrimp did not conform to various warranties. Count V of the complaint further purports to allege negligence in selecting, sampling and approval of the merchandise and asserts the rule of strict liability in tort. There is diversity of citizenship and the amount involved clearly exceeds $10,000. The question raised by defendant's motion to dismiss or to quash service of process is whether, by service under the Minnesota "long arm" or "one act" statute, Minn.Stat. § 303.13, Subd. 1(3) this court acquired jurisdiction. This is always a difficult problem, for if a law suit is tried and it develops at some later date that the court lacked jurisdiction, all proceedings have been an exercise in futility, particularly since there is an available forum to plaintiff in the federal court in the Southern District of New York. The issues presented are whether the Minnesota Supreme Court would find service of process sufficient were the case pending in State court and if so, would such application violate the due process clause of the Fourteenth Amendment to the United States Constitution. The material facts are not seriously in dispute.

Plaintiff is a Minnesota corporation with its principal place of business in Minnesota. Defendant Tupman Thurlow Company is a New York corporation with its principal place of business in that state. The latter solicited plaintiff's order for shrimp by telephone from New York to plaintiff in Minnesota and prior to the making of any contract sent shrimp samples to Minnesota for plaintiff's inspection in March of 1969. In alleged reliance on sample quality, plaintiff filled out a purchase order in that same month specifying various standards of quality for 113,200 lbs. of the Indian shrimp and sent it to New York where it was accepted by defendant. Defendant delivered the shrimp by transfer in storage at a public warehouse facility in New York City and was under no obligation to and did not ship the goods to Minnesota. Defendant admittedly is not qualified to do business in Minnesota and has had no offices or agents in Minnesota, though plaintiff and defendant have had several rather similar previous transactions. Payment was made by check drawn on a Minnesota bank. Plaintiff began to use shrimp stored at the warehouse bringing some quantities of it to Minnesota and then allegedly discovered gross discrepancies between its actual condition and the quality guaranteed to be in compliance with the sample. This suit followed.

Service of process was effected under Minn.Stat. § 303.13, Subd. 1(3) which provides that:

"If a foreign corporation makes a contract with a resident of Minnesota to be performed in whole or in part by either party in Minnesota, or if such foreign corporation commits a tort in whole or in part in Minnesota against a resident of Minnesota, such acts shall be deemed to be doing business in Minnesota by the foreign corporation and shall be deemed equivalent to the appointment by the foreign corporation of the secretary of the state of Minnesota and his successors to be its true and lawful attorney upon whom may be served all lawful process in any actions or proceedings against the foreign corporation arising from or

growing out of such contract or tort. . . . "

After a recitation of cases supporting the constitutionality and explaining the scope of the Minnesota statute, plaintiff rests its arguments primarily on Electro-Craft Corp. v. Maxwell Electronics Corp., 417 F.2d 365 (8th Cir. 1969).

This case would seem controlling. The only distinction is that in *Electro-Craft* nearly all of the goods, i. e., 278 receiver-transmitters though sold f. o. b. Texas were shipped into the state by defendant whereas in the case at bar only pre-contract samples were sent into Minnesota by defendant itself. The goods nevertheless, or a portion of them, after the contract was made, ended up in Minnesota as was obviously contemplated by the parties to the contract even though defendant was not bound by its contract to ship them itself. The *Electro-Craft* case provided f. o. b. shipment from Texas by the defendant there, indicating title passed to plaintiff in Texas and not in Minnesota as did title here pass in New York and not Minnesota; nevertheless the "contractual consequences were reasonably anticipated in Minnesota". The language in Kornfuehrer v. Philadelphia Bindery, Inc., 240 F.Supp. 157, 159–160 (D.Minn.1965), is instructive:

"The fact that the Bindery was to ship the goods into Minnesota would also satisfy the statutory tests. The shipment was to be f. o. b. Philadelphia and those shipping terms have served as the basis for an argument on the part of the Bindery that no part of the contract was to be performed by it in Minnesota.

Actually the argument seems irrelevant. If the transfer of the binders is not considered a part of the defendant's performance, then it is part of the plaintiff's. Any realistic treatment of the transaction must view the carrier bringing the shipment as the agent of one or both of the parties.[4] As mentioned earlier, the One Act statute applies when an act of either party is to be performed in Minnesota.

The court has little doubt but that the Minnesota Supreme Court would uphold jurisdiction were the case in that court. Hunt v. Nevada State Bank, 285 Minn. 77, 172 N.W.2d 292 (1969). Nor is this a case of a Minnesota seller suing an out-of-state defendant. See McQuay, Inc. v. Samuel Schlosberg, Inc., 321 F.Supp. 902 (D.Minn.1971) and cases therein cited. The court believes that there were sufficient contacts with the State of Minnesota in the case *sub judice* to uphold jurisdiction within the guidelines set out in Aftanase v. Economy Baler Co., 343 F.2d 187 (8th Cir. 1965), and to satisfy traditional concepts of fair play and substantial justice as required by International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

A separate order has been entered.

4. It seems that the shipping terms should also be irrelevant on the issue of whether sufficient minimum contacts exists to allow Minnesota to exercise jurisdiction in this case. The Bindery consigns the goods to the carrier for delivery in Minnesota and retains the limited right of stoppage in transit. Even more important, the shipping terms are only a method for designating which of the parties will bear the cost of shipping and the risk of loss. That is all they are designed to do. In this case, for instance, it is inconceivable that the Bindery would not have agreed to ship the goods f. o. b. Minneapolis if the plaintiff had requested those terms. The Bindery would merely have increased its prices to cover the extra shipping and insurance costs."