**MUNSINGWEAR, INC., Plaintiff,**

v.

**DAMON COATS, INC., Defendant.**

**Civ. No. 4–76–471.**

United States District Court,
D. Minnesota,
Fourth Division.

May 1, 1978.

See also D.C., 431 F.Supp. 1303.

Gordon B. Conn, Jr., Faegre & Benson, Minneapolis, Minn., for plaintiff.

Charles Quaintance, Jr., Maslon, Kaplan Edelman, Borman, Brand & McNulty, Minneapolis, Minn., for defendant.

## MEMORANDUM & ORDER

DEVITT, Chief Judge.

Defendant Damon Coats, Inc. moves to dismiss this action for lack of personal jurisdiction and improper venue, or, in the alternative, to stay this proceeding pending the outcome of an action presently in the New Jersey federal district court involving the same dispute. Each motion is denied.

The parties have agreed to a stipulated version of the facts for the purpose of this motion. Plaintiff Munsingwear, Inc., a Delaware corporation with its principal place of business in Minnesota, alleges a breach of warranty against defendant Damon Coats, Inc., a New York corporation with its principal place of business in New Jersey. Munsingwear alleges Damon sold it a substantial number of defective leisure suits. Damon has counterclaimed for breach of contract, claiming Munsingwear has without justification refused to pay for many of the leisure suits Damon sold to Munsingwear.

The stipulated facts do not indicate which party took the initiative in commencing negotiations for the sale of the leisure suits. Initially, the negotiations occurred primarily on the east coast, except for letters and telephone calls between the east coast and Minnesota. These negotiations led to an agreement by Damon to send 208 sample leisure suits to Munsingwear in Minnesota. Satisfied with these samples, Munsingwear ordered a large volume of them from Damon. At sometime an official of Damon Coats came to Minnesota to discuss the sale with Munsingwear officials. After the agreement as to the sale was reached, Damon caused the suits to be manufactured in the eastern United States and delivered to Munsingwear for transportation to Minnesota. Most of these suits were then distributed by Munsingwear to retail establishments throughout the United States, but the allegedly defective suits either were returned to Munsingwear in Minnesota or were discovered by Munsingwear in Minnesota among the unsold garments. Prior to the discovery of the alleged defects Munsingwear had paid Damon $132,024.78 of the total contract price. Of this amount, all but $18,801.75 was paid through checks drawn on accounts with Minnesota banks.

On August 23, 1976 Damon commenced an action in the United States District

Court for the Eastern District of Pennsylvania concerning the present dispute; that action was dismissed by the Pennsylvania federal court on April 20, 1977 for improper venue. On October 27, 1976, this present action was commenced by Munsingwear in this court. Finally, on May 13, 1977 Damon commenced yet a third action for the same dispute in the United States District Court for the District of New Jersey. Thus, Damon reached the courthouse first, but went to the wrong courthouse, while Munsingwear was the first party to go to the proper courthouse.

### Personal Jurisdiction

Defendant Damon's first motion is that the court dismiss for lack of personal jurisdiction over defendant. Jurisdiction is alleged by plaintiff Munsingwear to be proper under the Minnesota "One Act" Long Arm Statute, Minn.Stat. § 303.13(3) (1976). Damon does not dispute that the statute has been complied with, but rather claims that subjecting defendant to the jurisdiction of this court would violate due process.

■ For this court to have personal jurisdiction over Damon, which is a nonresident defendant, Damon must have such purposeful minimal contacts with Minnesota that maintenance of the suit in Minnesota "does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Moreover, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State . . . ." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). This latter requirement is deemed satisfied where a defendant seller had reason to know that its products might find their way to Minnesota, *see Hutson v. Weissenfels*, No. 77–1818, at 6 (8th Cir. March 22, 1978), and therefore it obviously has been met in the present case.

■ As an analytical tool for applying the *International Shoe* fair play and substantial justice requirement, the Eighth Circuit adopted a five factor test in *Aftanase v. Economy Baler Co.*, 343 F.2d 187, 197 (8th Cir. 1965). Under the *Aftanase* test, the court must consider the quantity of contacts the defendant has had with the forum state, the quality and nature of those contacts, the connection between the contacts and the cause of action, the interests of the forum state, and convenience of the parties and witnesses. *Id.* These factors are designed as guidelines only and all the factors need not point toward jurisdiction for the court to have personal jurisdiction over the defendant.

■ The quantity of contacts in this case is not great. The only contacts defendant has had with Minnesota are those involved in this litigation. These contacts include phone and mail communications entering and leaving Minnesota, the sending of sample leisure suits to Munsingwear in Minnesota, the sale of a large number of leisure suits to a corporation located in Minnesota and the resulting shipment of those suits into Minnesota, the trip to Minnesota by an official of defendant, and receipt of approximately $115,000 from plaintiff Munsingwear through Minnesota banks. Thus, the quantity of contacts, while not great, was not insignificant either.

The quality of the contacts is a very important factor because it indicates whether defendant has purposefully invoked the benefits and protection of the forum state's law and has set off a chain of events that it should foresee could have effects in the forum state. For these reasons, there is a clear tendency in the cases to hold a nonresident corporate seller subject to the jurisdiction of the courts of a state where the seller has caused his goods to be sold or sent into the forum state. *E. g., Electro–Craft Corp. v. Maxwell Elec. Corp.*, 417 F.2d 365, 368 (8th Cir. 1969); *McQuay, Inc. v. Samuel Schlosberg, Inc.*, 321 F.Supp. 902, 906 (D.Minn.1971). Thus, the fact that defendant is a nonresident corporate seller who caused the leisure suits to be sent into the state indicates a contact of significant "quality." The other contacts

Damon has had with Minnesota also can be characterized as of significant quality. For example, the checks used to pay Damon were drawn upon Minnesota banks, so presumably Damon could have invoked the assistance of Minnesota courts had the checks not been honored. Moreover, the revenue Damon realized as a result of the sale of the leisure suits was quite substantial.

The third consideration under the *Aftanase* guidelines is the connection between the contacts with the forum state and the litigation. This factor is significant because it indicates defendant reasonably could have anticipated that a dispute arising from the sale of the leisure suits might be litigated in Minnesota. *See Toro Co. v. Ballas Liquidating Co.*, 572 F.2d 1267, 1270 (8th Cir. 1978). In the present case all the contacts Damon has with Minnesota stem from the transactions that gave rise to this litigation. Thus, this factor weighs in favor of personal jurisdiction by this court over Damon.

The final two factors under *Aftanase*, interest of the forum state and convenience of the parties, are to be given the least weight. In this case plaintiff has its principal place of business in Minnesota and therefore the state has an interest in providing it a forum. In addition, the stipulated facts indicate the convenience factor does not decidedly favor either party.

The above discussion indicates the nature and quantity of defendant Damon's contacts with Minnesota are more than sufficient to render Damon subject to the jurisdiction of this court. It certainly does not offend principles of fundamental fairness to require a corporate defendant, who sold a large quantity of goods to a Minnesota buyer knowing the goods would be sent to Minnesota, and who reaped substantial revenues from the sale, to litigate in Minnesota a dispute concerning the sale of those goods. *Compare, e. g., Electro–Craft Corp. v. Maxwell Elec. Corp.*, 417 F.2d 365 (8th Cir. 1969) *Jeno's, Inc. v. Tupman Co.*, 349 F.Supp. 1185 (D.Minn.1972). The court also is reminded of Professor Moore's helpful rule of thumb that even where the contacts with the forum state are minimal they normally will result in jurisdiction if they are connected with the litigation. 2 J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 4.25[5], at 1173 (2d ed. 1977). Therefore, defendant's motion to dismiss for lack of personal jurisdiction is denied.

*Venue*

Defendant also requests that this action be dismissed for improper venue. Venue is proper in this district if plaintiff or defendant resides in Minnesota or if the cause of action arose in Minnesota. 28 U.S.C. § 1391(a) (1970).

The rules as to residency for plaintiff corporations appear to differ from the rules for defendant corporations with regard to venue. A defendant corporation is considered a resident of each state where it is incorporated, is licensed to do business, or is doing business. 28 U.S.C. § 1391(c) (1970). However, most courts hold that a plaintiff corporation for venue purposes is a resident only of the state in which it is incorporated. *E. g., Data Disc, Inc. v. Systems Technology Assoc., Inc.*, 557 F.2d 1280, 1289 (9th Cir. 1977); *American Cyanamid Co. v. Hammond Lead Prods., Inc.*, 495 F.2d 1183, 1184–85 (3d Cir. 1974). The rationale for this distinction between defendant and plaintiff corporations is that § 1391(c), *supra*, by its terms applies only to defendant corporations. For this reason defendant claims plaintiff, which has its principal place of business in Minnesota, is not a resident of Minnesota for venue purposes because plaintiff is incorporated in Delaware.

■ Venue rules are intended to facilitate convenience of the parties, and the convenience of the plaintiff, who chose the forum, normally should be given deference. *Gardner Eng. Corp. v. Page Eng. Co.*, 484 F.2d 27, 33 (8th Cir. 1973). Given these principles, it makes little sense to adopt a rule whereby a plaintiff corporation is not considered a resident, for venue purposes, of the state where its principal place of business is located simply because it chose for business purposes to incorporate in a

state other than the one where it in fact does most of its business. *See National Equip. Rental, Ltd. v. Sanders,* 271 F.Supp. 756, 759–60 (E.D.N.Y.1967). Therefore, venue is proper in Minnesota because plaintiff is a resident of Minnesota.

 Even if venue is not properly based on plaintiff's residency, venue is proper because defendant is doing business in Minnesota, and therefore is a resident of Minnesota for venue purposes, and because the cause of action arose in Minnesota. The facts that establish personal jurisdiction over defendant in Minnesota also tend to establish that it has been doing business in Minnesota for venue purposes. *See, e. g.,* 1 *Moore, supra,* at ¶ 0.142[5.–1–3], p. 1411. Thus, because personal jurisdiction clearly is proper in Minnesota, so also should venue be proper here.[1] Moreover, it appears that a "substantial" part of the events that gave rise to plaintiff's cause of action occurred in Minnesota. *See Gardner Eng. Corp. v. Page Eng. Co.,* 484 F.2d 27, 33 (8th Cir. 1973). The alleged warranty apparently initially was made in Minnesota when defendant sent sample leisure suits to Munsingwear in Minnesota. *See* Minn.Stat. § 336.2–313(1)(c) (1976). The allegedly defective suits were sent into Minnesota and the defects were discovered primarily in Minnesota. Finally, payment for the suits was made from Minnesota banks. Consequently, it is apparent that a substantial portion of the cause of action arose in Minnesota, thus making venue proper in this district.

### Convenience of the Parties

 Defendant requests that this action either be dismissed or transferred to New Jersey because of convenience to parties and witnesses, pursuant to 28 U.S.C. § 1404(a) (1970). When deciding a motion of this type, the plaintiff's choice of forum must be respected unless the defendant can show the balance of conveniences strongly favors dismissal or transfer. *See J. F. Pritchard & Co. v. Dow Chem. of Canada, Ltd.,* 462 F.2d 998, 1000 (8th Cir. 1972). The stipulated facts do not suggest the conveniences strongly favor defendant. An action in Minnesota will somewhat inconvenience defendant but likewise an action in New Jersey would inconvenience plaintiff and its witnesses. Therefore, plaintiff's choice of forum, Minnesota, must be respected and consequently defendant's motion is denied.

### Stay of Proceedings

 Defendant urges the court to invoke its inherent power to stay proceedings in deference to the pending action in New Jersey. The Eighth Circuit has been reluctant to approve this practice, *see Applegate v. Devitt,* 509 F.2d 106 (8th Cir. 1975), and has indicated that a stay is improper when it might result in delay and therefore unfairness to the plaintiff. *See Augustin v. Mughal,* 521 F.2d 1215, 1217 (8th Cir. 1975). In the present case, if the stay is granted the parties will be left to pursue the New Jersey action. The New Jersey litigation, however, was commenced about seven months after the present action. Absent evidence to the contrary, it must be assumed that a stay in favor of the New Jersey litigation would result in a delay and therefore be impermissible under *Augustin, supra.* Furthermore, the case law is relatively well-established that, where two federal actions have been started concerning the identical dispute, the first-filed action generally should be given priority and the second-filed action should be held in abeyance pending the outcome of the first-filed suit. *E. g., Cessna Aircraft Co. v. Brown,* 348 F.2d 689, 692 (10th Cir. 1965). This rule of priorities may not apply where the second-filed action is a more convenient forum than the first-filed one, but, as noted

---

1. *In Rheem Mfg. Co. v. Johnson Heater Corp.,* 370 F.Supp. 806, 809 (D.Minn.1974) this court stated in dictum that more contacts must be present to establish venue than to establish personal jurisdiction. In *Rheem,* however, the court found that both personal jurisdiction and venue were improper in this district. In the present case personal jurisdiction clearly is proper in Minnesota and therefore, assuming the *Rheem* dictum is good law, the *Rheem* requirement nonetheless has been met.

above, neither forum appears to be more convenient than the other. Therefore, defendant's request for a stay is denied.

All motions are DENIED.