**David L. ARNESON, Plaintiff,**

v.

**Gary GYGAX, and TSR Hobbies, Inc., a corporation, Defendant.**

Civ. No. 4–79–109.

United States District Court,
D. Minnesota,
Fourth Division.

July 25, 1979.

---

1. The report was prepared by Paul Newby, physicians' assistant under Dr. Schultz and the person who performed the autopsy.

Maher J. Weinstein and J. Michael Hirsch, Moss, Flaherty, Clarkson & Fletcher, Minneapolis, Minn., for plaintiff.

Marvin Jacobson, Jacobson & Johnson, St. Paul, Minn., and John L. Beard, Michael, Best & Friedrich, Milwaukee, Wis., for defendant.

## MEMORANDUM AND ORDER

DEVITT, Chief Judge.

Defendant Gary Gygax moves the court for relief, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, from a ruling of this court, filed May 21, 1979, denying defendant Gygax's motion to dismiss for lack of personal jurisdiction. In the alternative, defendant Gygax requests clarification of the court's order denying his motion to dismiss. The motion to dismiss is denied for the reasons clarified below.

This diversity action arises out of a dispute over the authorship and royalty rights to a game or game rules entitled "Dungeons and Dragons" and the rights to certain subsequently produced playing aids, game or game rules entitled "Advanced Dungeons and Dragons, Players Handbook" and "Dungeons and Dragons, Monster Manual," as well as various other publications pertaining to the above games.

### FACTS

Plaintiff's complaint alleges that defendants have breached a royalty agreement entered into in April 1975 between plaintiff and defendant Gygax, as co-authors of "Dungeons and Dragons," and TSR Hobbies, Inc., a Wisconsin corporation, of which Gygax is president and a major stockholder.[1] Plaintiff alleges that since mid-1977 amounts less than those required by the royalty agreement have been paid to him. Plaintiff further claims that defendants Gygax and TSR Hobbies, Inc., individually and

---

1. TSR Hobbies, Inc. is the successor to Tactical Studies Rules, a partnership of which Gygax was a member. The partnership was the original party to the contract. It was dissolved in 1975. The corporation assumed all rights and liabilities of the partnership. Both are referred to as TSR herein.

in concert, have tortiously interfered with the royalty agreement by developing and marketing, in Minnesota and elsewhere, games or game rules and playing aids "copied in substantial part and wholly derived" from "Dungeons and Dragons," and have defeated his right to the notoriety of authorship by falsely representing such games and playing aids to be solely authored by defendant Gygax.

The issue raised by defendant Gygax in his motion for relief is whether Gygax, individually, had sufficient minimum contacts with Minnesota, so as to enable this court to exercise personal jurisdiction over him, consistent with due process requirements. Gygax asserts that all his contacts with Minnesota were as agent for TSR Hobbies and therefore cannot be imputed to him for purposes of personal jurisdiction.

The record indicates that Gygax is and was at all times a resident of Wisconsin and has no place of business, no bank account, no phone listing, and owns no real or personal property in Minnesota. During 1973 and 1974 plaintiff and defendant Gygax in his individual capacity collaborated on the authorship of "Dungeons and Dragons." There was extensive correspondence between them by phone and mail during this time. The game was first marketed in January 1974. The written contract was executed in April 1975. Defendant Gygax signed in Wisconsin and he was named as co-author. His signature appears twice—once as Editor for TSR Hobbies, Inc., and once without any agency designation, as co-author. The contract assigned TSR Hobbies, Inc., the right to publish, sell, and distribute "Dungeons and Dragons" in exchange for a royalty of 10% of the cover price of each set sold, payable to the authors, Gygax and plaintiff. Plaintiff's royalties were paid, pursuant to the contract, to him in Minnesota, from 1974 until mid-1977. Since then further amounts, allegedly insufficient, have been received by plaintiff in Minnesota.

In 1977 TSR Hobbies, Inc. began marketing "Advanced Dungeons and Dragons, Players Handbook" and in 1978 "Dungeons and Dragons, Monster Manual," under the sole authorship of Gary Gygax. These works were advertised and marketed in Minnesota. No royalties were paid to plaintiff for sales of these works. Defendant Gygax contends that these are independent creations developed and produced by expenditure of literally thousands of hours of his time and the time of the TSR Hobbies, Inc. staff.

Gygax has numerous contacts with Minnesota, but he claims they were all as agent of TSR Hobbies, Inc. One example is a trip Gygax took to Minnesota in late October or early November 1975 for the purpose of negotiating contracts with various Minnesota residents for games and art work. Defendant Gygax also contacted plaintiff on this occasion.

Plaintiff also submits correspondence from Gygax tending to show that Gygax sought to have plaintiff promote sales of TSR Hobbies, Inc. products in Minnesota, including "Dungeons and Dragons." In his March 5, 1974 letter Gygax states ". . . every flyer you pass out could mean more royalty dollars. Remember, every retail sale we make is $1.00 to you. Put a flyer in all letters, right?" It is unclear whether Gygax wrote this letter in his corporate capacity or his individual capacity as co-author, or both.

In a March 13, 1974 letter to plaintiff, Gygax states "Seeing as how you and I each make a buck on a retail sale by TSR we have to be dreaming up ways to promote same! Get to work!" In the same letter, Gygax cites examples of his own promotional activities, asks plaintiff if he knows of other possibilities for promotion, and then states: "Now if that gets going we can really do a job selling D & D with ads and stories (with plenty of graphic work to put it across with POW!)" In sum, Gygax took numerous steps, both in and out of Minnesota, to cause the games in question to be marketed in Minnesota.

## DISCUSSION

The Minnesota long arm statute, Minn. Stat. § 543.19(1)(d)(2), permits the courts of Minnesota to exercise personal jurisdiction

over a non-resident individual if the individual commits any act outside Minnesota causing injury or property damage in Minnesota, except when the burden placed on the defendant by being brought under the state's jurisdiction would violate fairness and substantial justice.

■ The language of the statute evinces the legislative intent to permit the exercise of personal jurisdiction over non-residents to the maximum extent consistent with constitutional due process.

■ When personal jurisdiction is challenged, plaintiff has the burden of showing that he has acquired personal jurisdiction over the defendant. A prima facie showing on a pretrial motion is sufficient, however. See *McQuay, Inc. v. Samuel Schlosberg, Inc.*, 321 F.Supp. 902, 904 (D.Minn.1971), and cases cited.

■ For the court to have jurisdiction over defendant Gygax, a non-resident individual, Gygax must have sufficient minimum contacts with Minnesota such that maintenance of the suit in Minnesota "does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). It is also essential in each case that there be some act by which the defendant purposefully availed himself of the privilege of conducting activities within the forum state. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

Further guidance is found in *Toro Company v. Ballas Liquidating Co.*, 572 F.2d 1267, 1270 (8th Cir. 1978), where the court laid down the requirement that "the defendant's forum activities be related to the plaintiff's cause of action, and in *Aaron Ferer & Sons Co. v. American Compressed Steel Co.*, 564 F.2d 1206, 1211 (8th Cir. 1977), the court stated:

> To assess compliance with due process, with respect to jurisdiction in a particular case, the minimum contacts relied upon must be between the defendant and the forum state, not simply between the defendant and a resident of the forum state.

■ In a leading case, *Aftanase v. Economy Baler Co.*, 343 F.2d 187, 197 (8th Cir. 1965), the Eighth Circuit adopted a five factor test to be used as guidelines in applying the *International Shoe* fair play and substantial justice requirement. The first three factors are of primary significance:

(1) the quantity of the contacts of defendant with the forum state;

(2) the nature and quality of the contacts;

(3) the relation of the cause of action to the contacts;

The last two are of secondary significance:

(4) the interest of the forum state in providing a forum for its residents;

(5) the convenience of the parties.

■ Before applying these criteria to the facts of this case, one crucial point must be made. In his memorandum, plaintiff emphasizes the dual capacity in which defendant Gygax operated in the course of his activities relating to the present case. It is a point well taken. Defendant Gygax is co-author of the disputed game, entitled to royalties from its sales, and he is also the chief executive officer of the corporation to which he, along with plaintiff, assigned the right to produce, sell, and distribute the game. Because of his dual capacity as co-author and chief executive officer of the corporation, certain activities of the corporation are intermingled and coincide with activities of Gygax which furthered his individual authorship interests. As a result, several contacts with the forum state that were initiated by Gygax or under his direction can properly be viewed both as corporate contacts and as Gygax's individual contacts as co-author.

This intermingling is seen in the letters from Gygax to plaintiff quoted in the facts *supra*. It is also seen in the corporate decisions to devote substantial amounts of corporate staff time to development of the later, disputed works, and to devote corporate assets to advertising and marketing those disputed works in Minnesota and elsewhere. The court does not rely on the

doctrine of "piercing the corporate veil," where the corporation is seen merely as the "alter ego" of the individual, with the result that the two personalities are merged. Rather, the allegations made by plaintiff are sufficient, at this pre-trial stage, to create an inference that Gygax was acting both in his corporate capacity and in his individual capacity as co-author when he caused the games and game rules to be marketed in Minnesota. Compare *Independence Tube Corp. v. Copperweld Corp.*, 74 F.R.D. 462, 467 (N.D.Ill.1977); *Morgan v. Eaton's Dude Ranch*, 307 Minn. 280, 239 N.W.2d 761, 762 (1976).

Proceeding to the application of the *Aftanase* five factor test, the court finds the contacts of defendant Gygax with the forum state to be numerous and continuous. Games which bear his authorship have been actively advertised and marketed through his efforts in Minnesota from 1974 to the present. The defendant has recruited various representatives, including plaintiff, to promote sales of corporate products including the disputed works herein. He traveled to Minnesota in November 1975, and one purpose of that trip was apparently to contract for art work for the game "Dungeons and Dragons" which he co-authored with plaintiff. Defendant Gygax also contacted plaintiff during that trip to Minnesota.

The second factor, the quality and nature of the contacts, considers the contacts insofar as they indicate "whether defendant has purposefully invoked the benefits and protection of the forum state's law and has set off a chain of events that it should foresee could have effects in the forum state. For these reasons, there is a clear tendency in the cases to hold a nonresident corporate seller subject to the jurisdiction of the courts of a state where the seller has caused his goods to be sold in the forum state." *Munsingwear, Inc. v. Damon Coats, Inc.*, 449 F.Supp. 532, 535 (D.Minn.1978), and cases cited. Those cases involved corporate sellers but would appear to apply to individuals as well. In the instant case Gygax as co-author of "Dungeons and Dragons" and allegedly sole author of the later, disputed works, caused them to be developed by the corporation, and advertised and marketed in Minnesota. By causing games to be marketed and advertised in Minnesota, which he either claimed to have co-authored or solely authored, Gygax availed himself of the state laws to protect the contractual rights based on his authorship interests.

Plaintiff alleges that the royalties paid to him in Minnesota for sales of "Dungeons and Dragons" for the last half of 1978 amounted to $12,394.64. The protection of defendant's authorship interest in Minnesota courts was thus an important benefit. Therefore, the nature and quality of the contacts are substantial and significant.

The relationship between the contacts and the cause of action leans quite clearly toward exercising jurisdiction. The cause of action arises out of a dispute over rights under a royalty contract to various games or game rules. Defendant's contacts with the forum state involve promoting sales of those games, allegedly in derogation of that same contract.

As to the last two factors, which are of secondary significance, Minnesota's interest in providing a forum for plaintiff to protect his contractual rights from interference or breach is clear, since plaintiff is a citizen of Minnesota.

The convenience of the parties appears to be balanced. Because of its secondary significance and because the three primary factors lean in favor of jurisdiction, this factor cannot control.

Defendant's motion for relief under Rule 60(b) is DENIED.