**JOHNS–MANVILLE CORPORATION and Johns-Manville Sales Corporation, Plaintiffs,**

v.

**The UNITED STATES of America, Defendant.**

**Civ. A. Nos. 84–C–893, 84–C–894.**

United States District Court, D. Colorado.

Jan. 22, 1985.

Montgomery, Green & Jarvis, James K. Green, H. Keith Jarvis, Englewood, Colo., Dennis Markusson, Robert Batson, Helen Marsh, Rodger Wilson, Denver, Colo., for plaintiffs.

Linda A. Halpern, Richard K. Willard, U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

In these two actions, Johns-Manville Corporation and Johns-Manville Sales Corporation (collectively referred to as "Johns-Manville") seek reimbursement or indemnification for damages paid by them in settlement of two asbestos-related actions filed in the Superior Court of California for Los Angeles County. Civil Action No. 84–C–893 seeks reimbursement for the plaintiffs' $30,000 settlement with Hessuph W. Sexton, who was allegedly exposed to the plaintiffs' asbestos products while employed at Long Beach Naval Shipyard, California, from 1944 to 1975. Civil Action No. 84–C–894 seeks similar relief in connection with the plaintiffs' $67,000 settlement with Philsun Owen, who was allegedly exposed while employed by Pearl Harbor Naval Shipyard from 1941 to 1945 and by Long Beach Naval Shipyard from 1950 to 1954 and 1959 to 1978.

Plaintiff Johns-Manville Corporation was incorporated in New York and plaintiff Johns-Manville Sales Corporation was incorporated in Delaware. The headquarters and principal place of business for both plaintiff corporations has been located in Jefferson County, Colorado since 1971.

The complaints in these two cases are virtually identical; each asserts the same six claims for relief. The plaintiffs assert their First, Second, Third and Fourth claims under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), their Fifth claim under the fifth amendment to the United States Constitution, and their Sixth claim under the Public Vessels Act, 46 U.S.C. § 781 *et seq.* and the Suits in Admiralty Act, 46 U.S.C. § 741 *et seq.*

The United States has moved, pursuant to Fed.R.Civ.P. 12(b)(3), to dismiss the First, Second, Third, Fourth and Fifth claims in each case on the ground that venue is not proper in Colorado under 28 U.S.C. § 1402(b) and 28 U.S.C. § 1391(e). Alternatively, the United States has moved to transfer the cases to the United States District Court for the Central District of California.

The venue provision applicable to suits under the Federal Tort Claims Act is 28 U.S.C. § 1402(b). It provides that:

"Any civil action on a tort claim against the United States under subsection (b) of section 1346 of this title [28 U.S.C. § 1346(b)] may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred."

The statute controlling venue for claims against the United States arising under the Constitution is 28 U.S.C. § 1391(e), which provides for venue in any judicial district in which:

"(1) a defendant in the action resides, or (2) the cause of action arose, or (3) any real property involved in the action is situated, or (4) the plaintiff resides if no real property is involved in the action."

Subsection (1) has no application because in cases where the United States is the sole defendant, it cannot be treated as residing in a district merely because it maintains an office there. To conclude otherwise would render the remaining three venue limitations superfluous in any suit against the United States. *See Reuben H. Donnelley Corp. v. F.T.C.*, 580 F.2d 264, 267 (7th Cir.1978). I conclude that the United States does not reside in Colorado for purposes of this venue provision. Moreover,

subsection (3) does not apply because no real property is involved in this action.

## I. *Residence of a Corporate Plaintiff for Venue Purposes.*

It is clear that a corporate *defendant* resides for venue purposes in any judicial district in which it is incorporated or licensed to do business or is doing business. *See* 28 U.S.C. § 1391(c). But all seven circuit courts which have addressed the question where a corporate *plaintiff* resides for venue purposes have held that residence is limited to the state of incorporation. *Rosenfeld v. S.F.C. Corp.*, 702 F.2d 282, 283 (1st Cir.1983); *Reuben H. Donnelley Corp. v. F.T.C.*, 580 F.2d 264, 270 (7th Cir.1978); *Data Disc, Inc. v. Systems Technology Associates*, 557 F.2d 1280, 1289 (9th Cir.1977); *American Cyanamid Co. v. Hammond Lead Products, Inc.*, 495 F.2d 1183, 1184–86 (3d Cir.1974); *Manchester Modes, Inc. v. Schuman*, 426 F.2d 629, 629–32 (2d Cir.1970); *Carter-Beveridge Drilling Co. v. Hughes*, 323 F.2d 417, 418 (5th Cir.1963); *Robert E. Lee & Co. v. Veatch*, 301 F.2d 434, 435–38 (4th Cir.1961), *cert. denied*, 371 U.S. 813, 83 S.Ct. 23, 9 L.Ed.2d 55 (1962). The Tenth Circuit has not yet addressed this issue.

A number of district courts that have examined the issue of a corporate plaintiff's residence have concluded that a corporate plaintiff may be treated for venue purposes as residing both in the district of its incorporation and in the district where its principal place of business is located. In *Combs Airways, Inc. v. Trans-Air Supply Company*, 560 F.Supp. 865, 868 (D.Colo.1983), Judge Kane held that venue is proper under section 1391(a) in the district where a corporate plaintiff has its principal place of business. After noting that section 1391(c) provides that a corporation may be used in any judicial district in which it is incorporated, or licensed to do business or is doing business, his opinion reasoned:

"Because of modern corporate practices, venue and jurisdictional concepts have been broadened to accommodate the realities of contemporary business. The principal place of business may be considerably more significant to jurisdiction and venue than the place of incorporation. While I am aware that courts are not in agreement on this issue, I hold that this broader interpretation should apply to a corporation which institutes a suit as well as to one subject to suit. Another district court came to the same conclusion in *Munsingwear, Inc. v. Damon Coats, Inc.*, 449 F.Supp. 532 (D.Minn.1978)."

In *Munsingwear*, the court rejected the distinction that had been drawn by most courts between the residence of corporate plaintiffs and corporate defendants for venue purposes, stating:

"Venue rules are intended to facilitate convenience of the parties, and the convenience of the plaintiff, who chose the forum, normally should be given deference. *Gardner Eng. Corp. v. Page Eng. Co.*, 484 F.2d 27, 33 (8th Cir.1973). Given these principles, it makes little sense to adopt a rule whereby a plaintiff corporation is not considered a resident, for venue purposes, of the state where its principal place of business is located simply because it chose for business purposes to incorporate in a state other than the one where it in fact does most of its business." 449 F.Supp. at 537–38.

Similarly, the court in *Inter-Collegiate Press Inc. v. Myers*, 519 F.Supp. 765 (D.Kan.1981), acknowledged the many decisions holding that a corporate plaintiff is a resident within the meaning of section 1391(a) only in the state in which it is incorporated, but concluded that "the better view with regard to residence of a corporation for venue purposes is found in *Munsingwear, Inc. ...*" 519 F.Supp. at 769.

*Upjohn Company v. Finch*, 303 F.Supp. 241 (W.D.Mich.1969), is particularly instructive because of its in-depth examination of opposing points of view, and because it specifically addressed the residency question in the context of 28 U.S.C. § 1391(e). In holding that the residence of

a corporate plaintiff for purposes of venue under section 1391(e) includes its principal place of business, the *Upjohn* court stated:

"To hold otherwise would create a paradoxical interpretation of § 1391(c) which would result in having corporate residence mean one thing to a corporate plaintiff and something entirely different to a corporate defendant. Nothing has been brought to the attention of this Court which would suggest that the Congress intended such a result. Adherence to the liberal interpretation of subsection (c) seems especially appropriate to this Court in light of the fact that the legislative history demonstrates that the principal reason for the enactment of § 1391(e) was to expand upon the number of judicial districts in which suit against the government or officers thereof could be heard and relieve the burden previously imposed upon the courts of the District of Columbia. The court takes judicial knowledge of the fact that many corporations, large and small, are incorporated in the State of Delaware and have no other relationship to such state. To move the tremendous volume of suits against the Government and its officers from the District of Columbia to the District of Delaware does not appear to have been the intent of the Congress." 303 F.Supp. at 254.

## II. *Venue where "The Cause of Action Arose" or "The Act or Omission Complained of Occurred."*

The Manville plaintiffs have argued alternate grounds to support venue in this district. They seek to rely on 28 U.S.C. § 1391(e), which provides for venue where "the cause of action arose." Similarly, they cite 28 U.S.C. § 1402(b), which provides for venue in the district "wherein the act or omission complained of occurred."

I ordered the parties to present evidence on the issues of where the cause of action arose and where the act or omission complained of occurred. They were directed to consider *Thornwell v. United States*, 471 F.Supp. 344, 355–57 (D.D.C.1979), in pre-

paring the record. A hearing was held on October 26, 1984. Johns-Manville thereafter submitted the documentary evidence on which it relies for venue in Colorado.

In *Thornwell*, the court applied a "preponderance of the contacts" test. 471 F.Supp. at 357.

"[W]here 'the claim arose' should in our view be ascertained by advertence to events having operative significance in the case, and a commonplace appraisal of the implications of those events for accessibility to witnesses and records." 471 F.Supp. at 356, *citing Lamont v. Haig*, 590 F.2d 1124, 1134 (D.C.Cir.1978).

The court stated that a district court should accept venue "if the activities that transpired in the forum district were not insubstantial in relation to the totality of events giving rise to plaintiff's grievance." *Id.*

In these actions, Johns-Manville is claiming reimbursement for damages paid to two naval shipworkers in settlement of claims filed in a California Superior Court (Los Angeles County) alleging injuries sustained as a result of exposure to asbestos in California. The Central District of California thus appears to be the district where the greatest number of events having operative significance in the case occurred. Johns-Manville relies upon extensive, although generalized, contacts through the years between the United States as a major purchaser of asbestos products and Johns-Manville as a major manufacturer of asbestos products. The United States' relationship with Johns-Manville resulted in contacts with Colorado only because Johns-Manville moved its corporate headquarters to Colorado in 1971. In my view, something more than these generalized contacts is required to support venue in Colorado on the basis that Colorado is the district where the cause of action arose or the act or omission complained of occurred.

## III. *Conclusion.*

■ Having concluded that venue is not properly laid in Colorado on this alternate basis, I hold that venue is proper here on the basis that Johns-Manville resides in Colorado for venue purposes because its prin-

**174**

cipal place of business is located here. Thus I concur with Judge Kane's conclusion in *Combs Airways, supra,* that this approach better accommodates the "realities of contemporary business."

Accordingly,

IT IS ORDERED that the United States' motion to dismiss, or in the alternative to transfer these cases to the Central District of California, is denied.